The People of the State of New York, Respondent, *v.* Rosemary Woodruff, Appellant.

Second Department, July 7, 1966.

*Samuel R. Rosen, Richard T. Rosen* and *Noel Tepper* for appellant.

*John R. Heilman, District Attorney (Albert M. Rosenblatt* of counsel), for respondent.

Hopkins, J.   The contemner, pursuant to subpœna, appeared before the Grand Jury then engaged in an inquiry concerning

certain claimed criminal activities at Castalia Foundation wherein she resided. The criminal activities under investigation by the Grand Jury related to the illegal possession and use of narcotic drugs, acts of adultery, and the maintenance of a disorderly house. The Grand Jury conferred immunity on the contemner pursuant to statute (Penal Law, § 2447).

The contemner refused, despite her immunity, to answer questions concerning the use and possession of narcotics by residents of Castalia Foundation. She predicated her refusal principally on her rights under the First Amendment of the Federal Constitution and the State Constitution (art. I, § 3), stating that to answer the questions would violate the tenets of her religious belief in that her testimony would tend to bring harm to others; she also asserted that the questions were beyond the scope of the inquiry and that her immunity was not as broad as her liability to incrimination.

The contemner was thereafter brought before the County Court and persisted in her refusal to testify. The court then held a hearing, at which the contemner testified with respect to her faith in a religion akin to Hinduism (though without name), practiced at Castalia Foundation, and her belief, as a part of that religion, that she should not testify where harm would thereby result to others, including her coreligionists. Moreover, witnesses expert in the field of Oriental religion and Hinduism testified that her refusal to testify was based on a belief sincerely held by devotees of Hinduism.

Following the hearing the court held the contemner in contempt, though finding that she was sincere in her religious belief. On this appeal, the contemner contends in effect that the proceedings below were improperly conducted on several grounds: (1) there was no institution of the proceeding by attachment or order to show cause; (2) the order adjudicating the contempt failed to state the basis for the violation of section 750 of the Judiciary Law; (3) the contemner was not clearly directed by the court to testify; and (4) immunity was not granted to the contemner in the terms of the statute authorizing the grant.

We have considered these contentions, and find them meritless. The County Court gave a clear direction to the contemner to testify, and the record shows that the contemner was aware of that direction and reiterated to the court her refusal to testify. The court might have then regarded her refusal as a contempt committed in open court and summarily punished her (cf. *People ex rel. Cirillo* v. *Warden*, 11 N Y 2d 51, 53; *Brown* v. *United States*, 359 U. S. 41); instead, the court held a hearing, after

adjourning the proceedings to give the contemner the opportunity to prepare, and the contemner and her witnesses testified at the hearing. The order adjudicating the contempt is clear and complete, and we see no defect in the manner in which the Grand Jury granted immunity to the contemner.

Additionally, the contemner contends that her testimony cannot be compelled because a search of Castalia Foundation was made under an invalid warrant. The issue of the validity of the search warrant is not directly presented to us. In any event, we hold that a Grand Jury investigation in which immunity is conferred on a witness cannot be thwarted or impeded in obtaining the oral testimony of the witness by reason of a prior invalid search or seizure.

The contemner's main ground for reversal is that she has an unqualified right to practice her religious beliefs and that the compulsion of her testimony will do violence to her religious principles. We note the contemner's sincerity in her position, and that our Constitutions, both Federal and State, recognize the plurality of religious beliefs, including Hinduism (cf. *United States* v. *Seeger*, 380 U. S. 163, 175, 189–190); without doubt, the freedom of the exercise of religious worship is a preferred right in the hierarchy of our constitutional privileges (*Matter of Brown* v. *McGinnis*, 10 N Y 2d 531, 536). But it has been long held that the peace and safety of society may not be interfered with by religious scruples (*Davis* v. *Beason*, 133 U. S. 333, 342), as indeed our State Constitution expressly prescribes (art. I, § 3).

We balance, then, the interest of the individual right of religious worship against the interest of the State which is sought to be enforced. The process of the balancing of interests is twofold: first, a determination whether a restriction will be thus imposed on the individual's freedom of worship; and secondly, a determination whether the presence of a restriction is justified, after a consideration of the social and constitutional values involved (*Sherbert* v. *Verner*, 374 U. S. 398; *Matter of Jenison*, 375 U. S. 14; *People* v. *Woody*, 61 Cal. 2d 716).

We assume that the contemner's testimony, under compulsion, will violate her religious beliefs, sincerely held, and would to that extent impose a restriction on her freedom of worship. Nonetheless, we hold that the interest of the State sought to be enforced outweighs in this instance the individual right. The community is entitled to the assistance and information of its members in seeking out and controlling the commission of crime. "Every man owes a duty to society to give evidence when called upon to do so. This rule applies particularly to a

criminal prosecution " (*Matter of Manning* v. *Valente*, 272 App. Div. 358, 364, affd. 297 N. Y. 681). The Grand Jury has always been considered the arm of the community in the regulation of peace and order (cf. Code Crim. Pro., §§ 223, 245, 607, 609); and our Constitution commands that the power of the Grand Jury to find indictments shall remain untrammeled by law (N. Y. Const., art. I, § 6).

The State's interest in enforcing the power of the Grand Jury to inquire into the commission of crime is paramount to the contemner's religious right in the context of this case. Immunity had been granted to her, and the inquiry before the Grand Jury related to the commission of serious crimes within the county. The questions asked the contemner were material to the inquiry, and it was her duty to answer them. Her religious scruples must give way to the dominant right of the State to maintain peace and order. If it were otherwise, the fabric of society might be pierced and fatally rent by a religious belief sincerely held by an individual in action or in non-action damaging to the continuing existence of peace and order in the community; and the individual right, given vitality by the community, would take precedence over the right of the community to protect itself and to perpetuate the liberties granted to the individual. Clearly, such a result is impermissible.

The order should accordingly be affirmed.

CHRIST, Acting P. J., BRENNAN, HILL and BENJAMIN, JJ., concur.

Order affirmed.