Jasen, J. (dissenting in part).
I dissent and vote to affirm the order of the Appellate Division. This case presents two distinct but important issues: whether the Grand Jury can compel a witness to temporarily relinquish custody of business records so that the records may be used to assist the Grand Jury in the conduct of a lawful investigation and whether the Grand Jury may obtain the assistance of financial experts in analyzing those records.
In my view, the Grand Jury may properly do both. The contrary result reached by the majority hamstrings the abilities of Grand Juries, throughout the State, to fulfill their constitutional and statutory obligation to ferret out criminal conduct and initiate the prosecution of those responsible for serious offenses. The court’s decision is particularly unfortunate since the reasoning to support it overlooks the separate capacity of the Grand Jury which issued the judicial subpoena at issue and, instead, fuses together, and thus blurs, important distinction between the function of Grand Jury and prosecutor. Further, the issues presented raise matters of State law and, to resolve these issues, the majority relies upon dicta in unreasoned decisions of Federal lower courts construing the powers of Federal Grand Juries which are derived from a wholly different set of statutes and rules, upon gratuitous comments in State nisi prius cases never subjected to appellate review, and upon a single but ancient decision by the Appellate Division. I conclude that the majority’s decision is unwarranted in law and, most important of all, frustrates an important investigation in the affairs of nursing homes, institutions which, when operated by the wrong people, have abused the old and the infirm.
The Grand Jury is a constitutional institution (NY Const, art I, § 6) responsible for investigating instances of criminal activity. (GPL 190.05.) The court and the District Attorney are *256 its legal advisors. (CPL 190.25, subd 6.) The Grand Jury has full power to make an investigation or to conduct an inquiry on its own initiative and to accuse persons, by indictment, of criminal activity. (Matter of Manning v Valente, 272 App Div 358, 363, affd 297 NY 681.) Grand Juries "are clothed by the common law with inquisitorial powers and, of their own motion, may make full investigation to see whether a crime has been committed, and, if so, who committed it. They may investigate on their own knowledge, or upon information of any kind derived from any source deemed reliable; may swear witnesses generally and may originate charges against those believed to have violated the criminal laws.” (People ex rel. Livingston v Wyatt, 186 NY 383, 391-392.) The Grand Jury has always been considered to be the arm of the community in maintaining peace and order. (People v Woodruff, 26 AD2d 236, 239, affd 21 NY2d 848.)
Since the function of the Grand Jury is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, the investigatory powers of the Grand Jury are very broad. Indeed, the courts have traditionally afforded Grand Juries the widest possible latitude in the exercise of its powers and have repeatedly held that, in the absence of a clear constitutional or legislative provision to the contrary, the powers of the Grand Jury may not be curtailed, nor its proper investigations frustrated. (E.g., People v Stern, 3 NY2d 658, 661.) Included among the powers of the Grand Jury is the authority to compel the attendance of witnesses and the production of books and records. The Grand Jury, as the investigatory arm of the community and the courts, "has a right to every man’s evidence”, excepting only such persons as are entitled to a constitutional, statutory or common-law privilege. (Branzburg v Hayes, 408 US 665, 688; 8 Wigmore, Evidence [McNaughton rev], § 2192, p 70.) "The community is entitled to the assistance and information of its members in seeking out and controlling the commission of crime.” (People v Woodruff, 26 AD2d 236, 238, affd 21 NY2d 848, supra.) Every person owes a duty to society to give evidence when called upon to do so. This rule is expecially applicable to a criminal prosecution. (Matter of Manning v Valente, 272 App Div 358, 364, affd 297 NY 681, supra.)
If need be, a person within the State may be required to attend a Grand Jury proceeding as a witness by the issuance and service of a subpoena. (CPL 610.10, subd 1.) A subpoena is *257 a court process directing the person to whom it is addressed to attend and appear as a witness in a designated proceeding on a specified date. (CPL 610.10, subd 2.) The term subpoena includes a subpoena duces tecum which is a subpoena "requiring the witness to bring with him and produce specified physical evidence”. (CPL 610.10, subd 3.) Any criminal court may issue a subpoena for the attendance of a witness in a criminal action or proceeding. (CPL 610.10, subd 1.) Similarly, a District Attorney, or other prosecutor where appropriate, may, as an officer of the court in which he is conducting the prosecution of a criminal action or proceeding, issue a subpoena of such court for the attendance of any witness whom the people are entitled to call in the action or proceeding. (CPL 610.20, subd 2.) Hence, under the pertinent statutory provisions, a witness, together with specified books and records, may be compelled to appear before the Grand Jury upon a service of subpoena issued by the court or by the prosecutor, as an officer of the court on behalf of the Grand Jury. It is reasonable to delegate to the prosecutor the duty of notifying a witness that the Grand Jury wishes to have his testimony.
It follows that the Grand Jury may compel the attendance of a witness for as long as is reasonably necessary for legitimate investigatory purposes. Likewise, it must logically be concluded that property, produced in accordance with a judicial subpoena duces tecum, may also be at the disposal of the Grand Jury for a reasonable period sufficient to permit orderly and intelligent evaluation and assessment. This is a matter of common sense. The requirement that detailed records be "produced” is scarcely meaningful if the Grand Jury, and its duly authorized legal advisor and assistants, did not have time to study and evaluate the material contained in the records. The majority notes that this deficiency could be cured by "skilled questioning” (p 254). However, especially when dealing with complex white-collar criminal activities, detailed study of financial records is necessary in order to conduct "skilled questioning”.
More importantly, it has long been held that a Grand Jury may issue subpoenas for documentary evidence even if thp party called upon to produce the documents is not called to testify. (See Wilson v United States, 221 US 361, 373-375.) Phrased somewhat differently, it is quite possible, and in this case quite likely, that the Grand Jury is far more interested in the documents than in the personal testimony of the *258 witness. In fact, where the witness is suspected of criminal activity, the Grand Jury may not wish to grant immunity and, hence, is compelled to forego the personal examination of the witness. However, few constitutional self incrimination problems are posed by documentary evidence. The court’s decision, thus, forcloses an important avenue of investigation by eliminating a useful, and legitimate, investigatory technique.
The court’s opinion also reflects a misunderstanding of the nature of the Grand Jury process. The subpoena issued by the prosecutor, on the behalf of the Grand Jury, is returnable before the Grand Jury. It is the Grand Jury, not the prosecutor, who would obtain possession of these records. To say that the order of the Appellate Division gives the prosecutor "unsupervised possession of the petitioner’s books and records”, as the majority puts it (p 253) is an inexplicable inaccuracy. The Grand Jury would be given possession of the records and the prosecutor’s access to the records would be controlled by the members of the Grand Jury. The fact that prosecutors generally have no right to discovery in criminal cases (p 253) is also irrelevant. The Grand Jury has plenary investigatory power. Unlike the situation with office subpoenas issued by prosecutorial agencies of various kinds where issues of relevancy are carefully considered (see Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231-232), it has been authoritatively stated that the Grand Jury may even act on rumor or suspicion. (Matter of Manning v Valente, 272 App Div 358, affd 297 NY 681, supra; People ex rel. Travis v Knott, 204 App Div 379, 383.) The cases that hold that a subpoena duces tecum may not be used to ascertain the existence of evidence have no application to Grand Jury subpoenas. (Compare People v Coleman, 75 Misc 2d 1090; Matter of Saratoga Harness Racing Assn. v Monaghan, 9 Misc 2d 868; Matter of Atlas Lathing Corp. v Bennett, 176 Misc 959 [none of which involved a Grand Jury subpoena].)
As for Matter of Amalgamated Union v Levine (31 Misc 2d 416, 417), the statement that no right to retain subpoenaed records exists must be regarded as sheer dicta since the court concluded that it was without authority to consider the issue. It is true that, in Matter of American Sugar Refining Co. (178 F 109, 111, error dsmd 223 US 743), a Federal Trial Judge concluded that subpoenaed records may be removed at the close of each Grand Jury session. However, the court, in its four-paragraph memorandum, cited no authority whatsoever *259 for this position, nor did it express any reason for this conclusion. The holding of American Sugar was explicitly rejected, in a lengthy opinion, in the case of Robert Hawthorne, Inc. v Director of Internal Revenue (406 F Supp 1098, 1130-1131, n 66.) There, the Federal rule was stated to be that: "the grand jury and its executive agents * * * may retain the plaintiffs original documents while they are performing their lawful criminal investigatory functions, so long as the plaintiffs legitimate business need for the documents is at all times accommodated in some reasonable way. When the legitimate, good faith, criminal investigatory use of the documents has ended, however, or when the grand jury is discharged without the investigation’s having been resubmitted or scheduled for resubmission to a new grand jury, then all original subpoenaed materials must be returned immediately to their owner, the plaintiff. Subpoenaed documents may only be retained after this time, for whatever purpose, on the authority of a judicial order of impoundment, duly applied for by the government.” (406 F Supp, at p 1130.) This, I urge, is precisely what the rule should be in New York.
The Grand Jury should be permitted to retain custody of the documents for such time as is reasonably necessary to complete their lawful investigation. The interests of the owner of the documents may be accommodated by permitting access to the originals from time to time, or by returning a full set of photocopies. (406 F Supp, at p 1130, n 65.) Of course, where the Grand Jury is dissolved without returning an indictment, the papers subpoenaed should be promptly returned to their owner. (See Matter of Bendix Aviation Corp., 58 F Supp 953.) Where the documents are held for an unreasonable period of time and are not utilized by the Grand Jury, then continued retention by the Grand Jury is unwarranted. (See Matter of Gay Cottons v Hogan, 55 Misc 2d 126.)
The rule espoused here actually would work to the advantage of the witness whose documents were subpoenaed. The Grand Jury would have custody of the documents so that it may conduct an expeditious examination at the conclusion of which the documents would be returned. The majority adopts a laborious procedure requiring daily production and return. This procedure adds the inconvenience of having the witness appear daily and increases the likelihood that the investigation would be substantially delayed, a disadvantage to both the people and the witness.
*260 Finally, the majority does not dispute the well-settled power of the Grand Jury to employ experts to assist it to understand and analyze books and records. (See, e.g., United States v Kleen Laundry & Cleaners, 381 F Supp 519, 523.) Nevertheless, the court would require that the Grand Jury physically sit in session while such expert examination is undertaken. Such requirement is an impractical waste of time on behalf of all concerned. This extreme approach was explicitly rejected in Matter of Kelly (19 FRD 269), which the majority cites approvingly. In the Kelly case, the court stated that "no officer of petitioner-union would be entitled to be present while the grand jury was in actual session and then considering or examining the records and documents which had been produced pursuant to the subpoena.” (19 FRD, at p 269.) Further, the court stated that "[i]t would involve an unnecessary and unwarranted waste of time were the grand jury required to sit in session while accountants engaged to assist it examined each item—separating the wheat from the chaff and isolating matters which bear on the subject matter of the Grand Jury investigation.” (19 FRD, at pp 269-270.)
I conclude that the Grand Jury should be permitted to retain the subpoenaed records for a reasonable time in furtherance of its lawful investigatory purposes. Further, such retention would serve to permit the Grand Jury, as it deems fit, to arrange for experts to assist it in analyzing the information contained in the records. The majority’s decision to the contrary frustrates an. important investigation into matters of grave public interest—the care and treatment of the elderly and the infirm in nursing homes.
For these reasons, I dissent and vote to affirm the order of the Appellate Division.
Chief Judge Breitel and Judges Gabrielli, Jones and Wachtler concur with Judge Fuchsberg; Judge Jasen dissents in part and votes to affirm in a separate opinion in which Judge Cooke concurs.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.