OPINION OF THE COURT
Jasen, J.
On this appeal, we are asked to review an order directing a Grand Jury witness to answer questions propounded by a Special Assistant Attorney-General in proceedings being conducted by him pursuant to an executive order of superseder which defines the subject matter of the Attorney-General’s *16 authority only by reference to a numbered file of a pending investigation in the office of the Special State Prosecutor for Nursing Homes.
On December 20, 1978, the Governor, in response to calls of concern expressing the possibility that various crimes may have been committed by public officials in Albany County, issued Executive Order No. 78 (9 NYCRR 3.78) directing the Attorney-General to appear before a term of Supreme Court and a Grand Jury in Albany County for the purpose of managing and conducting proceedings "concerning or relating to any and all unlawful acts or omissions or alleged unlawful acts or omissions by any person arising out of, relating to, or in any way connected with the subject matter of an investigation presently pending in the Office of the Special State Prosecutor for Nursing Homes, Health and Social Services, entitled: People v John Doe, Special Prosecutor’s File Number N Y 9-41” and to supersede the District Attorney of Albany County in such proceedings.[1] The Governor’s authority to issue this executive order has its genesis in his constitutional duty to "take care that the laws are faithfully executed” (NY Const, art IV, § 3) and is specifically provided in an express statutory grant (Executive Law, § 63, subd 2).
Thereafter, a subpoena was issued commanding appellant Jane Doe to attend as a witness before the Grand Jury on January 18, 1979. The record reveals that her testimony would be vital to the successful execution of the Grand Jury’s function, inasmuch as appellant’s prior testimony before a Westchester County Grand Jury indicated her familiarity with the facts and circumstances underlying the Albany County investigation.
Appellant did appear before the Grand Jury on January 18 and was granted full transactional immunity. (See CPL 190.40, subd 2.) Although she answered some of the inquiries addressed to her, numerous lines of questioning were rebuffed with an unequivocal refusal to respond.[2] Faced with this *17 recalcitrance, the special prosecutor applied for an order directing appellant to reappear before the Grand Jury and to answer the questions put to her, or, in the alternative, for an order holding appellant in contempt. By cross motion, appellant sought various relief, including an order quashing the subpoena or directing disclosure to her of documents and papers held by the special prosecutor. Special Term granted an order directing appellant to answer the questions asked of her before the Grand Jury under pain of contempt, and denied appellant’s cross motion.
After remitting this matter twice for further development of the record and additional findings by Special Term, the Appellate Division unanimously affirmed the order of Special Term.[3] That court rejected appellant’s contention that Executive Order No. 78 is so vague and obscure to be deficient on its face, reasoning that "the statute [Executive Law, § 63, subd 2] does not mandate the form such a specification must take.” (69 AD2d 955.) Further, the Appellate Division held that the original subpoena and a subsequent subpoena directing appellant’s appearance before the Grand Jury were properly issued in accordance with the executive order. (71 AD2d 1038.)
Leave to appeal was granted by this court to examine the novel issues raised herein. We conclude that there should be an affirmance.
Although appellant urges reversal by raising numerous contentions on this appeal, we believe only two such arguments have sufficient merit to require discussion. Appellant first challenges the validity of Executive Order No. 78 by claiming that it fails to comply with the specificity requirement embodied in subdivision 2 of section 63 of the Executive Law. That section provides, in pertinent part, that the Attorney-General shall "[w]henever required by the governor, attend in person, or by one of his deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all the powers and perform *18 all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending.”
It cannot be disputed that this statutory language contemplates a degree of specificity for it is stated expressly that the criminal actions sought to be investigated "shall be specified in such requirement”. Indeed, this mandate of specificity serves a vital purpose. The grant of authority to the Attorney-General pursuant to subdivision 2 of section 63 of the Executive Law is neither self-executing nor boundless. Rather, the Attorney-General’s authority and that of the special prosecutor designated by him extend only to those matters set forth in the Governor’s order. (Matter of Dondi v Jones, 40 NY2d 8, 19; see Matter of Turecamo Contr. Co., 260 App Div 253, 259.)
In our opinion, this requirement of specificity is satisfied by the Governor’s reference to a numbered file of a pending investigation in the office of the special State prosecutor. The underlying purpose of such requirement — to inform the Attorney-General of the range of his anticipated duties — is fully satisfied inasmuch as the Attorney-General is made aware of the scope of his authority in superseding the local District Attorney. The scope of his authority is limited to those matters relating to, or in any way connected with, the subject matter contained in the investigatory file referred to in the executive order.
Nor can it be said that the Governor’s order of superseder is rendered less specific because the contents of such file are subject to almost inevitable flux. Investigatory or prosecutorial files are, without doubt, everchanging. While the Attorney-General or his designated special prosecutor should never be permitted to expand unilaterally the scope of his authority by increasing the file to encompass matters not included therein at the time the executive order was issued, this is not to say that the file must remain static. Rather, subdivision 2 of section 63 of the Executive Law should be interpreted as limiting the Attorney-General’s authority to those matters relating to, or in any way connected with, the subject matter contained in the special prosecutor’s investigatory file at the time the executive order was issued. A mere change in the contents of the file by adding additional information concern *19 ing the matter under investigation does not trigger automatically an increase in authority when so limited.
Further, it should be stressed that the authority exercised by the Attorney-General or his designee is not immune from scrutiny. Such authority can be challenged in the courts and it is within the constant control of the Governor. As Chief Judge Breitel stated when characterizing the nature of an executive order: "An Executive Order is ambulatory, and is alterable or revocable at the pleasure of the Governor. Indeed, on numerous occasions, three Governors have seen fit to reaffirm, amend, or limit the scope of the original Executive Order for various purposes”. (Matter of Dondi v Jones, 40 NY2d 8, 29, supra [dissenting opn].)
In short, we find no impropriety in defining the scope of the Attorney-General’s authority only by reference to a fictitious name and the number of a confidential file. Such reference is not lacking in specificity and serves the demand of subdivision 2 of section 63 of the Executive Law where the subject matter ordered to be investigated is contained in the numbered confidential file.
Underlying appellant’s attack is the more fundamental question whether the executive order must be phrased in such language so as to inform both a prospective witness and his attorney as to the scope of the investigation. Appellant argues, in essence, that given the enigmatic description of the scope of the Attorney-General’s authority embodied in Executive Order No. 78 — subject matter of the investigation entitled "People v John Doe, Special Prosecutor’s File Number N Y 9-41” — no witness summoned before the Grand Jury would be able even to guess at the propriety of the questions asked of him.
Analysis of this issue must commence with the recognition of the function of a Grand Jury. Obviously, the Grand Jury is not charged with the responsibility of determining the guilt or innocence of the accused, but, rather, its primary function "is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution”. (People v Calbud, Inc., 49 NY2d 389, 394.) In this sense, the Grand Jury serves a dual responsibility. As we have only recently observed: "[The Grand Jury] functions to protect the community from disruption by those who elevate and obtain their purely personal desires in ways not sanctioned by society-at-large, while, at the same time, protecting persons from unfounded accusations.” (Matter of *20 Keenan v Gigante, 47 NY2d 160, 167-168; see People v Calbud, Inc., 49 NY2d 389, 396, supra; People v Woodruff, 26 AD2d 236, 238-239, affd 21 NY2d 848; Branzburg v Hayes, 408 US 665, 686-688.)
Also well settled is the rule of law that every person owes a duty to give evidence before the Grand Jury when requested to do so. (Matter of Keenan v Gigante, 47 NY2d, at p 168, supra; People v Woodruff, 26 AD2d 236, 238-239, supra; Matter of Manning v Valente, 272 App Div 358, 364, affd 297 NY 681; see CPL 190.40, subd 1.) The Grand Jury, as an arm of society and the court, can only fulfill its essential function when members of the community are willing to co-operate fully with its requests. As has been observed, "[t]he community is entitled to the assistance and information of its members in seeking out and controlling the commission of crime.” (People v Woodruff, 26 AD2d, at p 238, supra.)
This obligation to come forth with evidence before the Grand Jury is not dependent upon a prospective witness or his attorney being informed of the scope of the investigation. (See, generally, 38 CJS, Grand Juries, § 41, p 1051, n 99.) Certainly, the Governor is not required to broadcast publicly the purpose of the investigation in his executive order, nor is the special prosecutor required to inform a witness of the Grand Jury’s underlying purpose. As explained by then Judge Lehman when writing for this court in Matter of Spector v Allen (281 NY 251, 257): "The grand jury must often conduct investigations to determine whether a crime has been committed, before it is possible for the District Attorney to formulate a charge or to point to any particular person. The successful prosecution of crime would be intolerably impeded if a District Attorney could be compelled to divulge, before he is ready, the nature of an investigation by the grand jury or the name of the person or persons suspected.” Stated another way, "[t]he grand jury is an arm of the court. Its subpoenas are presumptively valid and can only be challenged by an affirmative showing of impropriety. The People are not required to make public disclosure of the purpose of the inquiry in order to obtain compliance with its mandates. No witness may avoid obedience to the directions of the court without establishing by concrete evidence that the subpoena was issued in bad faith or that it is for some other reason invalid. These rules inhere in the very nature of the grand jury’s functions and of its authority.” (Matter of Manning v Valente, 272 App Div *21 358, 361, supra; see People v Doe, 247 App Div 324, 326, affd 272 NY 473.)
The reason for not requiring public disclosure of the purpose of a Grand Jury’s investigation is both simple and direct, and is indeed analogous to the reasons cited for maintaining the secrecy of Grand Jury minutes, to wit: "(1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely.” (People v Di Napoli, 27 NY2d 229, 235.) It should be abundantly clear that if public disclosure of the nature of an investigation by the Grand Jury or the identity of the persons under investigation were mandated, the very function of the Grand Jury would be undermined. ,
This is not to say, or even imply, that a witness is required to answer questions having no bearing on the subject matter of the investigation, for it has been consistently recognized that a witness has a right to refuse to answer irrelevant inquiries. (People v Ianniello, 21 NY2d 418, 425; see Matter of Koota v Colombo, 17 NY2d 147, 150.) In a situation where a witness or his attorney harbors a reasonable suspicion that a line of questioning has no bearing on the subject of the investigation, the witness can invoke the assistance of the court to insure the questions’ relevancy. At that point, it is incumbent upon the special prosecutor to demonstrate relevancy. Of course, "the relevancy of the questions need not be conclusively established. It is enough if the 'bearing [of the questions] on the subject of the investigation was susceptible of intelligent estimate’ (Matter of Spector v. Allen, 281 N. Y. 251, 258, supra) or if there was a 'justifiable suspicion that the former is related to the latter’ (People v. Doe [Byk], 247 App. Div. 324, 326, affd. 272 N. Y. 473, supra).” (Matter of Koota v Colombo, 17 NY2d 147, 150, supra.)
A few concluding remarks are necessary. It must be stressed that appellant was granted complete transactional immunity upon testifying before the Grand Jury. She could not be criminally prosecuted as a result of any illegal transaction to *22 which she testified, nor could any of appellant’s responses be used against her in a criminal proceeding, except in a prosecution for perjury or criminal contempt. Further, appellant’s contentions are, as a practical matter, without merit for a review of the transcript of the Grand Jury minutes reveals that appellant was informed as to the nature of the Grand Jury’s inquiry before testifying.
In sum, we hold that the subpoenas were properly issued in accordance with Executive Order No. 78 and that the questions asked of appellant by the special prosecutor would indeed be relevant to the subject matter of the inquiry.
In response to the dissent, only limited observations are required. Referring to a special prosecutor as a power-ladened official whose investigatory and prosecutorial powers are unchecked and whose success "may be measured in the public eye in terms of whether the inquiry results in the filing of criminal charges” is totally inappropriate, and any general characterization in this regard is not accepted by this court. As noted, the authority exercised by the Attorney-General or his appointed prosecutor can be challenged in the courts and is within the constant control of the Governor. Of course, the Governor is directly accountable to the general public for his actions when ordering that a local District Attorney be superseded.
Nor is the single legal authority (People ex rel. Osborne v Board of Supervisors of County of Westchester, 168 App Div 765) cited by the dissent, persuasive or applicable. That case dealt with the limited issue whether an attorney appointed orally by the Governor as a Special Deputy Attorney-General to investigate improprieties relating to the conduct of a State prison could compel the board of supervisors of a local county to pay him for services rendered. In short, we will not read into subdivision 2 of section 63 of the Executive Law a requirement of public disclosure of the purpose of a Grand Jury’s investigation which neither the statute nor any recognized principle of law requires.
Further, dictates of common sense require that we not now depart from the time-tested rule that a special prosecutor need not divulge publicly the purpose of a Grand Jury’s inquiry. To bootstrap the right of a witness not to answer irrelevant inquiries to justify public disclosure of the purpose of an inquiry would unduly hamper investigations and ignores the responsibility of the courts to check the power of the *23 special prosecutor when such authority is, in fact, abused. Relief lies in the courts, and the existence of this independent forum to air claimed wrongs renders any change in the law unnecessary. (See, e.g., Mann Judd Landau v Hynes, 49 NY2d 128; People v Rosenberg, 45 NY2d 251; Matter of Friedman v Hi-Li Manor Home for Adults, 42 NY2d 408; Matter of Dondi v Jones, 40 NY2d 8, supra; Matter of Sigety v Hynes, 38 NY2d 260.)
A concluding remark is necessary in response to both the concurrence and dissent. We refuse to engage ourselves in an academic debate concerning the relative merits of the Grand Jury system in this State. Suffice it to say that such discussion is irrelevant to the issues before us, and any reservations or suspicions individual Judges of this court may harbor with respect to the Grand Jury’s vitality are of no moment, for the Grand Jury is expressly mandated by our Constitution. (NY Const, art I, § 6.)
For the above-stated reasons, the order of the Appellate Division should be affirmed, without costs.

. The record reveals that the District Attorney of Albany County was informed of the contents of Special Prosecutor’s File No. N Y 9-41, and, in fact, joined in the request for a superseder.

. A review of the transcript of appellant’s testimony before the Grand Jury indicates that she refused to answer some of the questions posed to her on the advice of counsel. We would note that contrary to appellant’s claim, she was afforded ample opportunity to consult with counsel, and, indeed, the record reveals that the special prosecutor was co-operative in this regard.

. Appellant’s motion for a stay of enforcement of Special Term’s order was granted by the Appellate Division pending the determination of the appeal in that court. This court, upon granting appellant leave to appeal from the unanimous disposition below, also granted appellant’s motion to stay all steps and/or proceedings pursuant to the order of the Appellate Division.