OPINION OF THE COURT
George J. Balbach, J.
Petitioner seeks to quash or modify two Grand Jury subpoenas.
The respondent in this case is the Deputy Attorney-General for Medicaid fraud control. On August 12 and August 25,1982, this office served two Grand Jury subpoenas duces tecum upon petitioner’s hospital. The hospital now challenges these subpoenas alleging that the documents sought contain confidential medical information and are immune from disclosure due to the patient’s right of privacy and the physician privilege.
*627 I. BACKGROUND
The facts in this action indicate that the Special Prosecutor has been conducting a lengthy investigation into patient treatment at various hospitals, including petitioner’s.
In July, 1981, the Attorney-General requested records relating to a deceased patient. The hospital refused claiming, inter alia, patient-physician privilege. This court denied an application to quash these subpoenas and the Appellate Division affirmed (86 AD2d 672; 87 AD2d 595).
Ultimately, the matter came before the Court of Appeals in a proceeding entitled Matter of Grand Jury Proceedings (Doe) (56 NY2d 348), and that court held (p 351) “that a hospital being investigated by a Grand Jury in connection with possible crimes committed against its patients by the hospital staff may not successfully assert the physician-patient (CPLR 4504) or social worker-client (CPLR 4508) privileges, or the patient’s right to privacy, in opposition to a Grand Jury subpoena calling for the hospital’s records.”
The present subpoenas issued in August, 1982, now seek all “progress notes” for all patients in the medical intensive care unit at the hospital “for the period of time from 12 Midnight March 26, 1981 to 1:30 A.M. March 27, 1981.” This subpoena was issued on August 12, 1982. The second subpoena, issued on August 27,1982, requests “all original mechanical ventilation flow sheets for all patients on respirators at your hospital encompassing the entries for March 26, 19§1 through and including March 27, 1981.” These subpoenas are challenged on three grounds:
(1) The records sought are immaterial and the information desired could be obtained in other ways;
(2) The production of same would violate the patient’s right to privacy;
(3) Compliance would violate the patient-physician privilege.
Having touched on the background, the court now turns to the challenges.
II. RELEVANCE
The first attack centers on the relevancy of the requested records. The Special Prosecutor maintains that he is inves *628 tigating not only the death of a female patient who died in the medical intensive care unit March 27, 1981, and the circumstances leading to this death, but also the administrative policy regarding procedures under which life-saving and support measures may be selectively denied to seriously ill patients. The present records sought are important to the Special Prosecutor not so much for the medical histories of the patients themselves, but to determine who treated them during the time period in question. Petitioner maintains that this background information can be secured by alternate means — possibly by a perusal of the staff duty roster — and the Deputy Attorney-General is, in effect, seeking “peripheral” information.
In considering relevancy, this court starts with the purpose of the Grand Jury investigation. It is to investigate the deaths of patients and the decision-making process pertaining to life support systems. The simple question arises: Are the required documents sought relevant to the Grand Jury investigation? Relevancy is established when the materials requested are related to a legitimate objective of the Grand Jury’s investigation. (Virag v Hynes, 54 NY2d 437, 444.) Clearly, the presence of the hospital staff at a crucial time is pertinent to the present investigation. In such an investigation it must be kept in mind that the Grand Jury is “not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.” (Blair v United States, 250 US 273, 282.)
In challenging relevancy, it is the duty of the petitioner to establish by concrete evidence that the materials sought have no relation to the matter at hand. (Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe, 50 NY2d 14.) This court finds that the petitioner has not produced such proof. Nor is petitioner’s contention valid that the information sought could be obtained in other ways. The Grand Jury is entitled to select its own forms of investigation and its own methods of securing the truth.
III. PRIVACY RIGHTS
The second point advanced is that the production of the documents would violate a patient’s right to privacy. The *629 source of such patient’s rights are twofold: statutory and constitutional.
In advancing the statutory claim, petitioner cites section 2803-c of the Public Health Law, in particular, subdivision 3, paragraphs a and f. Paragraph a reads as follows: “Every patient’s civil and religious liberties, including the right of independent personal decisions and knowledge of available choices, shall not be infringed and the facility shall encourage and assist in the fullest possible exercise of these rights.” And paragraph f in the same vein, states: “Every patient shall have the right to have privacy in treatment and in caring for personal needs, confidentiality in the treatment of personal and medical records”.
In analyzing such statutory grants of confidentiality, it is clear that such rights are “less than absolute” {Doe v Roe, 93 Mise 2d 201, 214), and virtually all such privileges contain exceptions within the statutory powers that created them. Thus, section 2803-e of the Public Health Law imposes a duty on hospitals to notify the State of any possible misconduct on the part of its staff. Subdivision 3 in particular, contains a broad exception to the privacy requirements and reads as follows:
“3.(a) Any report or information furnished to the education department in accordance with the provisions of this section shall be deemed a confidential communication and shall not be subject to inspection or disclosure in any manner except upon formal written request by a duly authorized public agency or pursuant to a judicial subpoena issued in a pending action or proceeding.
“(b) Any person, facility or corporation which makes a report pursuant to this section in good faith and without malice shall have immunity from any liability, civil or criminal, for having made such a report. For the purpose of any proceeding, civil or criminal, the good faith of any person required to make a report shall be presumed.” (Emphasis supplied.)
A similar statute exists in 10 NYCRR 405.25 which deals with patient’s rights. Subdivision (a) reads:
“The hospital shall establish written policies regarding the rights of patients * * * These rights, policies and procedures shall afford patients the right to * * *
*630 “(8) privacy and confidentiality of all records pertaining to the patient’s treatment, except as otherwise provided by law”.
A reading of these statutes establishes that a patient’s statutory right to medical privacy is subordinate to the right of the State in cases of patient abuse or possible crimes committed against them by members of a hospital. A Grand Jury subpoena is one of the exceptions contemplated for the production of pertinent patient records and its use is sanctioned by the statutes. This being the case, this court holds that a patient’s statutory right to privacy must give way to the powers of the Grand Jury.
The second right of privacy is the so-called constitutional right. In light of the Doe case (56 NY2d 348, supra), it is no longer clear that patients do possess such a right regarding their medical records. In any event, the court held (p 353) that: “In addition, to the extent that the deceased patients are the beneficiaries of some constitutional right to privacy in their medical records, this purported right may not now be asserted by the appellant hospital. In the context of these cases, the hospital lacks standing to assert the constitutional rights, if any, of its patients.”
Therefore, petitioner’s second point lacks merit and may not be utilized as grounds for quashing the subpoena.
IV. PATIENT-PHYSICIAN PRIVILEGE
This leads to petitioner’s final and major point, namely, that there still exists a valid patient-physician privilege which is unaffected by the recent Doe ruling, and that such privilege may now be asserted to bar compliance with both subpoenas. The issue, then, is the scope of the recent ruling.
Petitioner maintains that the Court of Appeals ruling was based upon the decision set forth in People v Lay (254 App Div 372, affd 279 NY 737). In that case the defendant, charged with shooting his victim with intent to kill, was not allowed to bar a physician from testifying to the crime. Based on this holding, petitioner contends that the present Doe ruling is a most limited one and it means that a hospital may not invoke the privilege where its patient *631 was a suspected victim of a crime and the hospital itself a target for the Grand Jury investigation.
The Special Prosecutor challenges this “victim” theory. He advances the view that any hospital being investigated by the Grand Jury in connection with possible crimes committed against any of its patients by the hospital staff may not assert the physician-patient relationship, and the status of the patients is immaterial. Such a view is based on both the opening paragraph of the Doe decision (56 NY2d 348, supra) and the conclusion of the court (p 353), which reads: “In this case, the purpose of the Grand Jury subpoena was to investigate possible criminal activity in connection with the deaths of two elderly patients at the appellant hospital. Since the hospital was a central figure in this investigation, it should not be permitted to successfully assert the physician-patient privilege of its patients in this instance.”
Further, the Special Prosecutor advances the theory that while the Appellate Division was aware of the physician-patient privilege in the Lay case, it was more concerned with what it deemed an abuse of such privilege. That appellate tribunal was clearly troubled by the legal paradox inherent in the fact that a suspected wrongdoer was advancing another party’s privilege to shield his own actions, and ruled: “It could not have been intended by the Legislature that in such a case the act should be the means of protecting a criminal from just punishment.” (People v Lay, supra, p 373.)
Turning now to the present facts, this court, in ascertaining the scope of the Doe limitation, will consider three specific areas that the court touched upon in reaching its decision. These areas are: (1) The Lay principle; (2) The purpose of the physician-patient privilege, and (3) the scope and needs of the Grand Jury.
In the Lay case, which was affirmed without opinion by the Court of Appeals, our present court held “the principle underlying this holding is that the purpose of the privilege is to protect the patient, not to shield the criminal.” (Matter of Grand Jury Proceedings [Doe], supra, p 353.) Thus, the thrust of the present ruling is to advance the welfare of the patient and not assist the alleged wrongdoer.
*632 The court next explored the purpose of privileges in general. Here the court stated (Matter of Grand Jury Proceedings [Doe], supra, p 352): “Each of the privileges is designed to encourage a particular form of behavior or to serve a certain desirable purpose. These privileges exact a heavy toll, however, because they tend to keep otherwise competent evidence from the reach of the Grand Jury and the courts * * * Accordingly, where the application of a privilege will not serve to further the legitimate purposes for which it was created, there is little reason to permit its invocation.”
This language clearly indicates that the court is adhering to a practical view regarding privileges in connection with Grand Jury investigations. If the privilege does not fulfill its legitimate goal, it should not be utilized to bar a Grand Jury’s lawful search for the truth.
Finally, the courts recognized that the Grand Jury must be given the widest possible latitude in the exercise of its powers to inquire into possible criminal activities and reaffirmed this traditional view.
Applying these three legal concepts to the facts before us, it is difficult to see how the Lay principle can be extended only to those patients who are the alleged victims of wrongdoing. The reason for this is a basic one. In the Lay case, a Grand Jury presented legal evidence of an actual crime and the name of the victim of that crime; in our present case, we are one step below the trial stage and are still in the investigatory stage dealing with possible crimes. It is true that the Special Prosecutor feels that Maria M., who died, was a victim of possible criminal acts. However, no one can say with any degree of legal certainty whether any other patients might have been the victims of similar or related crimes. That is exactly the purpose of the Grand Jury. Both parties to this action acknowledge that a part of the present investigation concerns the ‘no coding” procedure of the hospital. It is possible that once this area is explored, it might lead to other forms of patient abuse. Thus, everything before this court is in embryonic stage. If this be so, how can this court determine which patient is a victim and which is not. Surely the Court of Appeals did not intend the motion court to hold pre-Grand Jury hear *633 ings in order to determine if patients are to be granted victim status or not. The only logical conclusion to be drawn from the Doe holding, therefore, is that once there is relevant evidence indicating that a patient has been subject to possible criminal activities by a hospital, that hospital may not utilize the medical privileges to block a Grand Jury from investigating the records of any patient connected with the act. Only this view would enable the Grand Jury to conduct a full and sweeping investigation and satisfy the purpose of the Lay principle. Nor would any patient’s testimony subject that person to disgrace since the Grand Jury operates in secret.
This court concludes that the Doe decision was not meant to create a narrow exception to the medical privilege by denying an alleged criminal the right to assert a possible victim’s privilege, but rather was intended to create a limitation on the scope of the privilege itself by holding that any person or entity subject to proceedings in connection with crimes against patients should not be permitted to successfully assert the physician privilege of its patients.
Based upon the foregoing, this court accepts the view of the Special Prosecutor as to the scope of the patient-physician privilege and denies petitioner’s application to quash the two subpoenas which are the subject of this action.