OPINION OF THE COURT
George J. Balbach, J.
Petitioner moves to quash or modify a Grand Jury subpoena duces tecum.
The respondent herein is the Deputy Attorney-General in charge of New York State Medicaid Fraud Control Unit. On May 30, 1984, this State agency issued a Grand Jury subpoena duces tecum to petitioner, seeking production of books, documents and records from his business organization, “Doe” Enterprises. This business organization is a “housekeeping consulting firm” operated by petitioner for the purpose of serving hospitals and nursing homes in this State.
In addition, the respondent also served petitioner with a personal subpoena which is not challenged in this action.
*1011 The Attorney-General now alleges that an examination of the petitioner’s records is necessary to determine whether public or private funds have been used for “kick-back” purposes in the health care industry.
In particular, the Deputy Attorney-General seeks the following:
(1) All consulting contracts and agreements with Professional Services, Inc., health related facilities, nursing homes, and hospitals.
(2) All correspondence and documentation between (“Doe” Enterprises) and the Health Department.
(3) All correspondence and documentation between “Doe” Enterprises and Professional Services, Inc.
(4) Cash disbursement journal.
(5) Cash receipts journal.
(6) Bank statements, deposit slips and canceled checks.
(7) Billings to Professional Services and supporting documentation.
(8) Vendor invoices and other supporting documents relating to purchases.
(9) Accounts payable subsidiary ledger, payroll records, W-2 statements, 1099 and 941 forms.
(10) All correspondence and documents relating to finders fees, consulting fees and referral fees and commissions relating to the obtaining and the renewal of contracts and agreements with health care facilities, including nursing homes and hospitals.
Petitioner now moves to quash or modify the duces tecum subpoena on the grounds that:
(1) It is overbroad and seeks material which is not relevant to the State’s investigation.
(2) Such subpoena violates his 5th Amendment rights from self-incrimination.
I
Overbroad
Petitioner’s first challenge centers on the scope of the subpoena. It is his contention that the subpoena is overbroad and oppressive. It is argued that since the petitioner does business with nonhealth organizations as well as the nursing home industry, the records of other business transactions would not be relevant to the State.
*1012 The general rule dealing with a Grand Jury subpoena is that an application to quash will be granted only if the records are so irrelevant that the subject of the inquiry has “to make it obvious that the production would be futile” for the purpose of investigation (Matter of Manning v Valente, 272 App Div 358, 361, affd 297 NY 681). The burden of proving relevancy is upon the party seeking to quash the Grand Jury subpoena duces tecum (Virag v Hynes, 54 NY2d 437).
The documents sought in this case are the records of the “Doe” Enterprises for a period of five years — from 1979 to 1984. While this request may be broad, it is based upon the good-faith belief that at least some of these documents would have a valid bearing on the State’s current investigation and, hence, it does not constitute a blind fishing expedition. The documents on their face are relevant. In this connection, it might be noted that the Valente (supra) rule does not preclude the petitioner from ever challenging relevancy. “In a situation where a witness or his attorney harbors a reasonable suspicion that a line of questioning has no bearing on the subject of the investigation, the witness can invoke the assistance of the court to insure the questions’ relevancy.” (Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 21.)
Based on the above, the petitioner has not established that the material sought is overbroad or irrelevant and the application to quash is denied on those grounds.
II
THE 5TH AMENDMENT ARGUMENT
The next, and more serious challenge, is that the production of the records would violate petitioner’s 5th Amendment rights to be free from compulsory self-incrimination. While it is acknowledged that the custodian of business records of a corporation may not refuse to produce documents on the ground of infringement of 5th Amendment rights, petitioner maintains that his business enterprise is a sole proprietorship and wholly owned and operated by him individually; consequently, the contents of the records should be privileged; it is further maintained that the mere act of producing the records would have incriminating effects.
The State acknowledges some merit to this incrimination argument and refutes it by pointing out that the petitioner has been issued a personal subpoena. This subpoena will grant him immunity pursuant to CPL article 190 when he testifies in any respect. In effect, the Attorney-General maintains that since *1013 “[a] witness who gives evidence in a grand jury proceeding” (CPL 190.40 [2]) automatically receives immunity, this testimonial privilege would cover any business records that he is interrogated on. Therefore, since petitioner would possess immunity, the State argues that the status of the documents is immaterial.
With this factual background, the court now considers the law in this area.
THE LAW
The 5th Amendment provides that no person “shall be compelled in any criminal case to be a witness against himself”. This constitutional provision “protects a person * * * against being incriminated by his own compelled testimonial communications.” (Fisher v United States, 425 US 391,-409.) Such protection has been extended to one’s own papers since these reflect a “private inner sanctum of individual feeling[s] and thoughts]” (Couch v United States, 409 US 322, 327). One’s private papers, therefore, are protected by the 5th Amendment; however, this privacy does not extend to nonprivate records (Beilis v United States, 417 US 85); or records required to be kept by law (Shapiro v United States, 335 US 1).
As to business records, the 5th Amendment does not protect the records of corporations, unincorporated associates or partnerships. A sole proprietor can invoke the privilege to his benefit (Boyd v United States, 116 US 616).
In recent years, the protection of one’s business papers has been interpreted to mean not a “general protection of privacy” (Fisher v United States, supra, p 400), but rather a protection against “compelled self-incrimination” (Maness v Meyers, 419 US 449, 474). Thus, not every invasion of one’s business privacy violates the constitutional mandate, but only those involving compelled testimonial self-incrimination of some sort. Therefore, if business records are prepared voluntarily or by a third party, they cannot be said to be compelled in a constitutional sense.
Since petitioner has not claimed that any of his business records were prepared involuntarily, the contents of same cannot be deemed protected under the 5th Amendment.
This leads to petitioner’s second constitutional argument in that the act of producing the demanded records will violate his constitutional guarantees against self-incrimination. He cites the recent case of United States v Doe (465 US_, 104 S Ct 1237 [1984]) in support of his proposition.
*1014 A review of the Doe case (supra) establishes that a sole proprietor of a business was served with a subpoena duces tecum and directed to bring virtually all of his business records before a New Jersey District Court Grand Jury. A motion was made in the District Court to quash under the 5th Amendment (Matter of Grand Jury Empanelled Mar. 19, 1980, 541 F Supp 1). The District Court ruled that the mere act of producing the documents had communicative aspects which warranted 5th Amendment protection and held that any document not required to be kept by law was protected by the Constitution. The District Court therefore quashed the subpoena.
This case was affirmed by the United States Court of Appeals, Third Circuit (Matter of Grand Jury Empanelled Mar. 19,1980, 680 F2d 327), on two grounds.
The first was that the contents of the business records were privileged on 5th Amendment grounds and distinguished the case from the Supreme Court holding in Fisher (supra) on the theory that the documents were prepared by the individual himself and not, as in Fisher, by a third party.
The second ground was that the act of producing the documents had 5th Amendment implications which had been violated, as found by the lower court.
The matter reached the Supreme Court which ruled, “As we noted in Fisher, the Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination [425 US, at p 396]. Where the preparation of business records is voluntary, no compulsion is present. A subpoena that demands production of documents ‘does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate * * * or affirm the truth of the contents of the documents sought.’ [Supra, at p 409.] Applying this reasoning in Fisher, we stated: ‘The Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications.’ ” (United States v Doe, supra, p_, p 1241.)
The Supreme Court concluded by stating that the act of producing the business records was privileged and cannot be compelled without statutory immunity.
The facts of the Doe case (supra) are similar to the present matter. In the instant case, petitioner charges that the act of producing his records would involve testimonial self-incriminatian because he would consent to the existence of such papers, their availability and certify as to their accuracy.
*1015 The court has examined the list of documents requested by the State and concludes that the production of these records would compel the petitioner to admit that such documents exist, that they are in his possession or control and they are authentic. These communications made under the power of subpoena would constitute compelled self-incrimination.
This leads to the State’s contention: Would a general testimonial subpoena compensate for the production of petitioner’s business records? The court is of the opinion that it would not. In the Doe case (supra), the New Jersey prosecutor did not grant any form of immunity but offered not to “use respondent’s act of production against him in any way.” (United States v Doe, supra, p_, p 1244.) The Supreme Court thus rejected the “constructive immunity” doctrine and held that since the subject documents were privileged under the 5th Amendment, the act of producing same was also privileged and could not be compelled without a statutory grant of immunity. Therefore, based on the Doe case this court must agree that the act of producing the records before the Grand Jury would violate 5th Amendment rights. These documents being privileged would fall under the protection granted by CPL 196.40 (2) (c) since they are books, papers, records as defined by Penal Law § 175.00 and consequently the witness is privileged with respect to the production of such evidence (Matter of Grand Jury Subpoena [Bekins Record Stor. Co.], 62 NY2d 324, 328).
As to the scope of the immunity, the court has evaluated the list of documents sought and concludes that item 2, which requests “all correspondence and documentation between ‘Doe’ Enterprises and the Health Department” is not privileged. This information deals with public records, required to be kept by law and would therefore be outside the scope of constitutional protection (People v Doe, 59 NY2d 655); the remaining items 1 and 3 through 10 would fall under the protection of CPL 190.40 (2) (c) which grants immunity.
The petitioner, therefore, possesses dual 5th Amendment privileges and must receive distinct and independent statutory grants of immunity. If he appears before a Grand Jury under a personal subpoena, oral responses would be privileged under CPL 190.40 (2). In addition, if he provides books and records, the act of producing and identifying these records would grant him immunity under CPL 190.40 (2) (c).
Accordingly, the application is granted to the extent indicated.