People v Abelove (2019 NY Slip Op 08453)





People v Abelove


2019 NY Slip Op 08453


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

110535

[*1]The People of the State of New York, Appellant,
v
Joel Abelove, Respondent.

Calendar Date: October 7, 2019

Before: Garry, P.J., Lynch, Mulvey and Devine, JJ.


Letitia James, Attorney General, New York City (Judith N. Vale of counsel), for appellant.
Dreyer Boyajian LLP, Albany (Joshua R. Friedman of counsel), for respondent.



Mulvey, J.
Appeal from an order of the Supreme Court (Nichols, J.), entered June 14, 2018 in Rensselaer County, which granted defendant's motion to dismiss the indictment.
In response to multiple incidents in which law enforcement officers caused the deaths of unarmed civilians and the public's concerns "that such incidents cannot be prosecuted at the local level without conflict or bias, or the public perception of conflict or bias," in July 2015 Governor Andrew Cuomo issued Executive Order No. 147 (Executive Order [Cuomo] No. 147 [9 NYCRR 8.147] [hereinafter EO147]). EO147 appointed the Attorney General as special prosecutor in matters where the death of an unarmed civilian was caused by a law enforcement officer or in "instances where, in [the Attorney General's] opinion, there is a significant question as to whether the civilian was armed and dangerous at the time of his or her death" (Executive Order [Cuomo] No. 147 [9 NYCRR 8.147]).
On April 17, 2016, Randall French, a sergeant with the City of Troy Police Department, shot civilian Edson Thevenin, causing his death. Due to the circumstances surrounding Thevenin's death and the possible implications of EO147, defendant, who was then the Rensselaer County District Attorney, reported the incident to the Office of the Attorney General (hereinafter OAG). Two days later, OAG delivered a letter to defendant requesting information to determine whether OAG had exclusive jurisdiction over the incident. By letter dated April 21, 2016 — sent to OAG by regular mail — defendant responded that he had determined that EO147 did not apply because Thevenin's use of his vehicle rendered him an armed civilian and, thus, defendant would continue to exercise jurisdiction over the matter. On April 22, 2016, five days after Thevenin's death, defendant commenced and completed a grand jury proceeding to investigate whether French's shooting of Thevenin was legally justified (hereinafter the Thevenin grand jury), which resulted in a "no true bill," reflecting a finding that French's use of force was justified.
In February 2017, due to concerns about the investigation into Thevenin's death, Governor Cuomo issued Executive Order No. 163 authorizing the Attorney General "to investigate, and if warranted, prosecute any and all unlawful acts or omissions or alleged unlawful acts or omissions by any person arising out of, relating to, or in any way connected with the [death of Thevenin] and [the] subsequent investigation, including [the] grand jury presentation" (Executive Order [Cuomo] No. 163 [9 NYCRR 8.163] [hereinafter EO163]). OAG empaneled a grand jury (hereinafter the 2017 grand jury) that was tasked with, among other things, investigating alleged misconduct surrounding the Thevenin grand jury presentation.
At the conclusion of the 2017 grand jury proceeding, defendant was charged by indictment with two counts of official misconduct and one count of perjury in the first degree. The official misconduct charges stemmed from defendant's alleged misconduct during his presentation to the Thevenin grand jury, at which defendant allegedly withheld material evidence and allowed French to testify without waiving immunity from prosecution. The perjury charge was based on defendant's alleged false testimony to the 2017 grand jury. Defendant moved to dismiss the indictment on the ground that, among other things, OAG lacked jurisdiction to prosecute the perjury count and the unauthorized presentment of that count required dismissal of the entire indictment. Supreme Court granted the motion and dismissed the indictment. OAG appeals.
Supreme Court erred in concluding that OAG lacked the authority to prosecute the perjury count and, therefore, erred in granting defendant's motion to dismiss the indictment. Executive Law § 63 (13) provides that the Attorney General "shall . . . [p]rosecute any person for perjury committed during the course of any investigation conducted by the [A]ttorney[][G]eneral pursuant to statute . . . [and] [i]n all such proceedings, the [A]ttorney[][G]eneral may appear . . . before any court or any grand jury and exercise all the powers and perform all the duties necessary or required to be exercised or performed in prosecuting any such person for such offense." The 2017 grand jury constituted an investigation conducted by OAG, but the parties disagree as to whether that investigation was conducted "pursuant to statute." Defendant asserts that OAG conducted its investigation pursuant to EO163 rather than pursuant to a statute. OAG asserts that the investigation was conducted pursuant to Executive Law § 63 (2), which provides that the Attorney General "shall[,] . . . [w]henever required by the [G]overnor, attend . . . any term of the [S]upreme [C]ourt or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal actions or proceedings as shall be specified in such requirement; in which case the [A]ttorney[][G]eneral . . . shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the [D]istrict [A]ttorney would otherwise be authorized or required to exercise or perform."
"When presented with a question of statutory interpretation, [this Court's] primary consideration is to ascertain and give effect to the intention of the Legislature" (People v Andujar, 30 NY3d 160, 166 [2017] [internal quotation marks and citations omitted]; accord People v Burman, 173 AD3d 1727, 1727 [2019]). "While the words of the statute are the best evidence of the Legislature's intent, legislative history may also be relevant as an aid to construction of the meaning of words" (People v Andujar, 30 NY3d at 166 [internal quotation marks and citation omitted]; see People v Garson, 6 NY3d 604, 611 [2006]). Moreover, "in construing a statute[,] courts should consider the mischief sought to be remedied by the new legislation, and they should construe the act in question so as to suppress the evil and advance the remedy" (People v Roberts, 31 NY3d 406, 418-419 [2018] [internal quotation marks and citation omitted]).
Defendant points to the title of the bill enacting Executive Law § 63 (13) — "[a]n act to amend the executive law, in relation to the duty of [OAG] to prosecute for perjury in certain cases" (L 1958, ch 35 [emphasis added]) — as proof that the Legislature meant to narrowly limit OAG's power to prosecute for perjury only to investigations specifically delineated by statute. However, the "certain cases" language in that title could also mean that it only applies to cases of perjury arising during an OAG investigation, as opposed to all cases of perjury.
Defendant additionally points to portions of the legislative history that refer to specific statutes through which OAG is given explicit authority, mostly relating to specialized areas of law that are traditionally prosecuted by OAG (see e.g. Letter from Sen MacNeil Mitchell, Bill Jacket, L 1958, ch 35 at 8; Mem of Atty Gen, Bill Jacket, L 1958, ch 35 at 10-11; Letter from Assn of the Bar of the City of New York, Bill Jacket, L 1958, ch 35 at 13). Yet the context of those references indicates that the authors were providing some specific examples, rather than expressing their understanding that OAG would be limited to prosecuting perjury in such instances. Indeed, then-Attorney General Louis Lefkowitz noted that it had been assumed, until a court held otherwise, that OAG had authority to prosecute for perjury committed during any OAG investigation (see Mem of Atty Gen, Bill Jacket, L 1958, ch 35 at 10, citing People v Dorsey, 176 Misc 932, 941-942 [Queens County Ct 1941]). Lefkowitz urged approval of the amendment adding subdivision (13) to Executive Law § 63, stating that, "[i]n view of the increasing number of investigations which [OAG] is conducting, it is imperative that the Attorney General be empowered to deal more effectively with witnesses who are evasive and who flout the law in testifying during the course of investigations now authorized by statute to be conducted by [OAG]" (Mem of Atty Gen, Bill Jacket, L 1958, ch 35 at 10-11).
Others urging passage of the bill noted the inefficiency of OAG having to turn a perjury case over to the local District Attorney when OAG, which was investigating or prosecuting the underlying matter, was already familiar with the relevant facts and the materiality of the false statement [FN1] (see Letter from Assn of the Bar of the City of New York, Bill Jacket, L 1958, ch 35 at 13; Letter from Brooklyn Bar Assn, Bill Jacket, L 1958, ch 35 at 15-16; see also Letter from Thomas McCoy, Counsel of the Judicial Conf, Bill Jacket, L 1958, ch 35 at 17 [suggesting disapproval of the bill for other reasons, but noting its "laudable" purpose of allowing the Attorney General "to follow through ancillary areas of his investigations more conveniently"]). In his approval message, Governor Averell Harriman stated that this statute was intended to "confer express power upon the Attorney General to prosecute for perjury committed during the course of an investigation which he is authorized to conduct," and that the Attorney General sought this power to "enable him to deal more effectively with evasive witnesses" (Governor's Mem approving L 1958, ch 35, 1958 Public Papers of Averell Harriman at 514-515). The Governor did not mention that the power would be limited to investigations conducted pursuant to statute, perhaps signaling that this aspect of the legislation was of low significance or that the phrase should be interpreted broadly to include most, if not all, investigations conducted by OAG.
Supreme Court concluded, based on its reading of the legislative history, that "the ability to prosecute for perjury via Executive Law § 63 (13)[] is limited to instances when specific statutory provisions delineate both the Attorney General's authority to investigate, and the scope of that investigative authority." The court then held that, because Executive Law § 63 (2) does not delineate the scope of authority but leaves it to the particulars of the necessary executive order, Executive Law § 63 (13) does not give OAG authority to prosecute for perjury related to an investigation conducted by virtue of an appointment made via Executive Law § 63 (2). We disagree.
Although Executive Law § 63 (2) permits and requires the Governor to define — in the pertinent executive order — the scope of OAG's authority regarding a particular investigation or prosecution (see People v Leahy, 72 NY2d 510, 515 [1988]; Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe, 50 NY2d 14, 18 [1980]), the investigation is still conducted pursuant to that statute, albeit within a scope defined by the executive order. The Legislature, by enacting Executive Law § 63 (2), statutorily gave power to the Governor to call upon OAG to conduct investigations. That the statute and executive order must necessarily work in tandem does not diminish or eliminate the statute as a source of authority for OAG to conduct the investigation.
Here, as typical under these situations, OAG obtained authority to conduct the 2017 grand jury investigation through a combination of Executive Law § 63 (2) and EO163. The statute gives OAG power, but only when the Governor "require[s]" OAG to act (Executive Law § 63 [2]). Relatedly, the Governor would have no authority to give powers to the Attorney General — through an executive order or otherwise — without the Legislature having granted the Governor that ability. Indeed, the Court of Appeals has noted "that the Attorney[]General has no general authority to conduct [criminal] prosecutions and is without any prosecutorial power except when specifically authorized by statute" (People v Gilmour, 98 NY2d 126, 131 [2002] [internal quotation marks, ellipsis, brackets, emphasis and citations omitted]; see People v Cuttita, 7 NY3d 500, 507 [2006]; People v Romero, 91 NY2d 750, 754 [1998]; Matter of Johnson v Pataki, 91 NY2d 214, 225 [1997] [noting that the delineation of law enforcement functions between the Attorney General and District Attorneys "has consistently been left to the Legislature"]). Therefore, we reject the conclusion that the phrase "pursuant to statute" excludes investigations conducted by OAG pursuant to an executive order issued by the Governor under the authority granted to him by statute, namely, Executive Law § 63 (2). OAG's authority to investigate defendant was derived from that statute, at least indirectly through the conduit of an executive order issued thereunder.
Accordingly, Supreme Court should not have dismissed the perjury count against defendant, as OAG was authorized to prosecute that crime. Inasmuch as Supreme Court dismissed the official misconduct counts based solely on its conclusion that OAG lacked authority to prosecute the perjury count,[FN2] the entire indictment should be reinstated.
Garry, P.J., Lynch and Devine, JJ., concur.
ORDERED that the order is reversed, on the law, motion denied and indictment reinstated.



Footnotes

Footnote 1: To constitute perjury, the false statement must be material to the action, proceeding or matter involved or to the matter in which the statement is made (see Penal Law §§ 210.10, 210.15).

Footnote 2: Defendant acknowledges that OAG had the authority to investigate and prosecute charges of official misconduct related to his presentment to the Thevenin grand jury.