THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v DANNY MARINE et al., Defendants.

Supreme Court, Kings County, January 19, 1989

## APPEARANCES OF COUNSEL

*James Hubbard* for Danny Marine, defendant. *Joseph Miller* for Terrell D. Killibrew, defendant. *Paul Lieberman* for Rodney Payton, defendant. *Joseph Miller* for Gerald Figueroa, defendant. *Winston Lee* for Pablo Reyes, defendant. *Joseph Sieger* for Henry Butler, defendant. *Martin Munn* for Jomo Lucas, defendant. *Paula Deutsch* for Jose Diaz, defendant. *Elizabeth Holtzman, District Attorney (Stephen Cunningham* of counsel), for plaintiff.

## OPINION OF THE COURT

MICHAEL C. CURCI, J.

The aforementioned eight cases all arose on motions in writing by the respective defendants demanding that their indictment(s) be dismissed. We have written one opinion for

all as the fact patterns and prayers for dismissal in each are substantially similar, certainly involving the same questions of law.

The questions are so unique to our New York State law, they have been alluded to at only two other Supreme Court level cases, not at the Appellate Division nor at the Court of Appeals level. We have thusly dissected the issues as to:

(1) What is a "true bill"?

(2) Is a "true bill" the same as an indictment?

(3) When must a "true bill" be filed? Must it be every "true bill," or may the People collect them, and file several "true bills" of indictment, on one indictment?; or,

(4) Does every true bill of indictment need to be filed as it occurs?

(5) What is the root cause of the defect in these cases, and how may CPL 180.80 be more cogently treated?

### I. FACTS

(1) *People v Marine—indictment No. 10631/88*

On October 21, 1988, the defendant Danny Marine was arrested and charged with the possession of drugs. The People first presented evidence to the Grand Jury on October 26, 1988 and October 27, 1988. At the conclusion of the October 27, 1988 Grand Jury session, the prosecutor charged the Grand Jury on one count of criminal possession of a controlled substance in the fourth degree and asked them to deliberate and vote on the case. The Grand Jury then voted out a "true bill" as regards the one count of criminal possession of a controlled substance in the fourth degree.

On November 2, 1988, the prosecutor told the Grand Jury that he would present additional evidence and charge them on the law in the case. The additional evidence presented by the People consisted of a police laboratory report. The People then charged the Grand Jury as regards the additional charges of criminal possession of controlled substance in the third, second and seventh degrees. The Grand Jury then voted and found a second "true bill".

The one indictment that resulted charged the defendant with criminal possession of a controlled substance in the fourth degree (as voted in the first true bill) and criminal possession of a controlled substance in the third, second and

seventh degrees (as voted in the second true bill of indictment).

## (2) *People v Killibrew—indictment No. 8152/88*

On August 23, 1988, the defendant Killibrew was arrested for the sale and possession of cocaine. The People first presented evidence to the Grand Jury on August 26, 1988 and August 29, 1988. At the conclusion of the August 29, 1988 Grand Jury session, the Assistant District Attorney charged the Grand Jury on one count of criminal sale of a controlled substance in the third degree and asked them to vote on the case. The Grand Jury then voted out a "true bill" as regards the one count of criminal sale of a controlled substance in the third degree.

On September 9, 1988, the Assistant District Attorney stated to the Grand Jury that she would present additional evidence and additional charges to the Grand Jury in the case of *People v Killibrew* (Grand Jury No. 8152/88).

The additional evidence presented consisted of a police laboratory report. The Assistant District Attorney then charged the Grand Jury as regards the additional charges of criminal possession of a controlled substance in the third degree (two counts) and seventh degree (two counts). The Grand Jury then voted and found a second "true bill".

The indictment that resulted charged the defendant Killibrew with criminal sale of a controlled substance in the third degree (as voted in the first true bill), and criminal possession of a controlled substance in the third degree (two counts) and seventh degree (two counts) (as voted in the second true bill).

## (3) *People v Payton—indictment No. 7670/87*

On September 1, 1987, the defendant Payton was arrested. The People first presented evidence to the Grand Jury on September 4, 1987. At the conclusion of that session, the prosecutor charged the Grand Jury as regards the following five counts—criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third (two counts), fourth and seventh degrees. The Grand Jury then voted a "true bill" on these five counts.

On September 9, 1987, the Assistant District Attorney presented additional evidence to the Grand Jury in the form of a ballistics report. The People then charged the Grand Jury as regards the additional charge of criminal possession of a weapon in the third degree. The Grand Jury then voted and

found a second "true bill" as regards criminal possession of a weapon in the third degree.

The indictment that resulted charged the defendant Payton with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third (two counts), fourth and seventh degrees (as voted in the first true bill) and criminal possession of a weapon in the third degree (as voted in the second true bill).

*(4) People v Figueroa—indictment No. 8327/88*

The defendant Figueroa was arrested for the sale and possession of drugs on August 25, 1988. The case was first presented to the Grand Jury on August 31, 1988. At this August 31, 1988 session, the prosecutor charged the Grand Jury on the one charge of criminal possession of a controlled substance in the third degree. The Grand Jury then voted a true bill as to that one count.

On September 8, 1988, the Assistant District Attorney stated to the Grand Jury that she wished to present additional evidence and then charge them on additional charges. The additional evidence consisted of police laboratory reports. The prosecutor then charged the Grand Jury as regards criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree (two counts) and seventh degree (three counts). The Grand Jury then voted and found a second true bill as regards these six additional counts.

The subject indictment against defendant Figueroa charged him with criminal possession of a controlled substance in the third degree (as voted in the first true bill), criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree (two counts) and seventh degree (three counts) (as voted in the second true bill).

*(5) People v Reyes—indictment No. 9779/88*

In the case of defendant Reyes, the People first presented evidence to the Grand Jury on October 5, 1988. At that October 5, 1988 session, the Grand Jury was charged and voted a "true bill" as regards three counts, these counts being criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees.

On October 7, 1988, the People presented additional evi-

dence on this case, in the form of a police laboratory report. The Grand Jury was then charged on two additional counts, namely—criminal possession of a controlled substance in the third and fourth degrees. The Grand Jury then voted in these two additional counts and found a second "true bill".

The defendant Reyes was indicted for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees (as already voted in the first true bill), and criminal possession of a controlled substance in the third and fourth degrees (as voted in the second true bill).

### (6) *People v Butler—indictment No. 9369/88*

On September 27, 1988, the prosecutor first presented evidence against defendant Butler and charged the Grand Jury as regards three counts of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees. The Grand Jury then voted a true bill on those three counts.

On September 29, 1988, the prosecutor presented additional evidence against the defendant Butler. This additional evidence consisted of a police laboratory report. The Grand Jury was then charged on the crimes of criminal possession of a controlled substance in the third and seventh degrees. The Grand Jury then voted and found a second true bill on these two counts.

The indictment against the defendant Butler charged him with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees (as voted in the first true bill), and criminal possession of a controlled substance in the third and seventh degrees (as voted in the second true bill).

### (7) *People v Lucas—indictment No. 10481/88*

On October 18, 1988, the defendant Jomo Lucas was arrested and charged with the sale and possession of drugs. The People first presented evidence to the Grand Jury on October 24, 1988. At the conclusion of that session, the People charged the Grand Jury as regards criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees and asked them to deliberate and vote on the case. The Grand Jury then voted out a "true bill" as regards these three counts.

On October 26, 1988, the prosecutor instructed the Grand Jury that he would present additional evidence to them. The additional evidence consisted of two police laboratory reports. The People then charged them as regards the additional charges of criminal possession of a controlled substance in the third and seventh degrees, and unlawful possession of marihuana. The Grand Jury then voted and found a second "true bill".

The one indictment that resulted charged the defendant Lucas with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees (as voted in the first true bill of indictment) and criminal possession of a controlled substance in the third and seventh degrees and unlawful possession of marihuana (as voted in the second true bill of indictment).

## (8) *People v Diaz—indictment No. 9638/88*

On October 3, 1988, the prosecutor first presented evidence against defendant Diaz and charged the Grand Jury as regards criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees. The Grand Jury then voted out a "true bill" on these three counts.

On October 4, 1988, the prosecutor presented additional evidence on this case. The additional evidence consisted of the testimony of the arresting officer and a police laboratory report. The Grand Jury was then charged on one additional count of criminal possession of a hypodermic instrument. The Grand Jury then voted on this additional count and found a second "true bill".

The defendant was indicted for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and seventh degrees (as voted in the first true bill) and criminal possession of a hypodermic instrument (as voted in the second true bill).

### II. LAW AND DECISION

The facts presented in these eight cases are in some ways distinguishable from the recent decision in *People v Cade* (140 AD2d 99 [2d Dept 1988]).* In *People v Cade,* the prosecutors

---

* *Mot for rearg granted and original determination adhered to* 145 AD2d 565; *see,* discussion in Anderson, *Court Warns on Grand Jury Action,* NYLJ, Dec. 23, 1988, at 1, cols 3-5.

requested that the Grand Jury *void* its first vote prior to the filing of an indictment in order for them to present additional testimony. In the case(s) at bar, the Assistant District Attorney did not request the Grand Jury to void or disregard any prior voted true bill.

In *People v Cade (supra)* the prosecutor recharged the Grand Jury anew on all the counts, including the counts charged in the prior voted true bill, and asked for a new vote. In *Cade,* a second vote was then taken which resulted in a true bill which was thereafter filed. In the cases at bar, the prosecutor did not recharge or ask for any new vote, but ignoring the first true bill, went forward and requested a second vote on additional charge(s).

In *Cade (supra),* the court held that this action by the People constituted "a dismissal under *People v Wilkins* (68 NY2d 269, 996) such that the case may only be resubmitted to the same or another Grand Jury with the permission of the court (CPL 190.75 [3])" *(supra,* 140 AD2d, at 100). Therefore, it may be paraphrased that in *Cade,* the People's action constituted an illegal usurpation of judicial authority and power. The resulting indictment in the *Cade* case was dismissed.

Our fact situation in these several cases differs from *Cade (supra),* but the fundamental principles as stated in *Cade* apply to the cases.

The decision in *People v Cade (supra,* at 101) restated the fundamental principle that: "Grand Juries exist by virtue of our State Constitution and the superior court which impanels them. They are not arms or instruments of the District Attorney (NY Const, art I, § 6; CPL 190.05; *Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe,* 50 NY2d 14). The manner in which the Grand Jury functions and its procedures and its duties are carefully defined by statutory provisions which are to be strictly construed *(see, Matter of June 1982 Grand Jury of Supreme Ct. of Rensselaer County,* 98 AD2d 284). * * * Where a Grand Jury votes to indict (CPL 190.60 [1]), it must, through its foreperson * * * *file an indictment with the court which impaneled* it (CPL 190.65 [3])." (Emphasis supplied.)

It is well settled that the Grand Jury is an "arm of the court" and thus courts have the responsibility to prevent unfairness in its proceedings *(see, People v Kennedy,* 127 Misc 2d 712 [1985]; *People v Davis,* 119 Misc 2d 1013 [1983]).

While not factually on point with the *Cade* case *(supra),* we

appear to have a distinctive problem where we have found two voted true bills, but only one indictment filed. It appears that the basic rule as stated in CPL 190.65 (3) is that each vote (true bill) resulting in an indictment must be filed. But in these eight cases, only one filing is noted and one indictment for each case.

In the very recent decision of Justice Miller (Kings County, Crim Term, Part 61) entitled *People v LeGrand* (142 Misc 2d 151), the court ruled on a case which is on point with the cases at bar. That court decided that once a Grand Jury voted a true bill, an indictment must be filed. Justice Miller stated that: "Absent a specific request from the jury to hear additional evidence, charges or recharges, there exists no common-law or statutory authority for the prosecutor to submit additional charges to the Grand Jury prior to the filing of the indictment. Any such submission is a nullity since the Grand Jury no longer had jurisdiction over the matter and therefore, the indictment is fatally defective" *(supra,* at 153).

Let us ask rhetorically, "Are we making the error of an illogical extension here?" After all, there was no request to void any count(s) in the cases at bar. There was no dismissal of any count(s) in any sense of the word in the cases at bar. Quite the contrary, the District Attorney kept the first voted count(s) intact and did *not* disregard them and recharge them as in the *Cade* case (140 AD2d 99, *supra).* In fact, the first "true bill" was ignored, as the People proceeded straight ahead to the second "true bill". They did not ask for a second "true bill" for the first initial count(s) over again. Quite to the contrary, they did not touch the initial count(s) in any manner.

In these several cases, the People have never attempted, legally nor illegally, to void, dismiss, or withdraw the count(s) voted upon at the first "true bill".

We suggest that, if at that time, the People had handed up the count(s) under the first "true bill" and filed same, and then thereafter, did the same thing with the second set of count(s) under the second "true bill", and filed same—separately, as two indictments—and then perhaps moved to consolidate (CPL 200.20 [4]) there would be little to no "jurisdictional argument". But that is not what occurred in these cases.

That puts us back on the track of the judicial problem alluded to above. We are still left with two true bills, but only

one filing and one indictment. There is no question that it is at least an irregularity and that the procedure is unacceptable. The question is, is this irregularity curable now at this late stage? We think not.

First, let us examine; does every true bill need to be filed? We should start with the definition of, "What is a 'true bill' "? See *People v Whalen* (26 Misc 2d 714, 715, *affd* 14 AD2d 989), which states: "A 'true bill' was a term indorsed on an indictment under the common law to show that a majority of the grand jurors (amounting to 12 at least) found the evidence made out a sufficient case to warrant a prosecution." This cite from the *Whalen* case *(supra)* is substantially the same definition given a "true bill" out of Black's Law Dictionary. Under the old Code of Criminal Procedure, an indictment could not be found without the endorsement of a "true bill" signed by the foreman. Also out of Black's Law Dictionary, they in effect show that a true bill is the same as an indictment. True bill is short for true bill of indictment (Black's Law Dictionary 135, para 12 [2d ed]) as stated below. "Bill of Indictment. A formal written document accusing a person or persons named of having committed a felony or misdemeanor, lawfully laid before a grand jury for their action upon it. If the grand jury decide that a trial ought to be had, they indorse on it 'a true bill;' if otherwise, 'not a true bill' or 'not found.'—State v. Ray, Rice (S.C.) 4, 33 Am. Dec. 90."

Secondly, let us note some of the mechanics used by a modern Grand Jury to assist in defining the "true bill".

The Grand Jury is apparently given a copy of CPL 190.65 through 190.90. So they know, as CPL 190.60 and 190.65 state, what their options are, that if they do indict, that the "true bill of indictment", must be filed.

The method now employed apparently (instead of indorsing) is that the secretary of the Grand Jury, a member of the Grand Jury, sits on a side desk and keeps a log wherein he or she enters the date, indictment number, the defendant's name, the charges, the District Attorney's name and in the last column the secretary writes "true bill" or "no true bill", or sometimes, "dismissed". This again shows that "true bill" means to the Grand Jury an indictment. So, a "true bill" is an indictment.

At the Grand Jury, the majority procedure appears to be that the foreman will say, we have a true bill, or we do not have a true bill. It comes through as nonverbatim reporting at

the reporters transcript of the Grand Jury proceedings, being typed cryptically, "True Bill" *[sic]*. Why the reporters, and the system, allow this nonverbatim entry at this point is beyond this court. It is an important procedure, therefore, the reporter should record every word stated by the foreman and others.

This language does not come from the street, as most lay people do not talk like that. That language had been introduced to them by the Grand Jury personnel, they being told, in effect, what a true bill, or no true bill, meant. In effect, what they are told, and what they report out by the foreman, means a true bill of indictment has been voted by the Grand Jury.

In most cases, the transcript does show the usual final type language of the Assistant District Attorney at the first "true bill" vote, which includes but is not necessarily exclusive of "I now leave you to deliberate and *vote* on this case." (Emphasis supplied.) What did the Assistant District Attorney mean when he advised the Grand Jury to *"vote"?* He meant vote on a true bill of indictment, or no true bill of indictment, or dismissed, that's all he could have meant. In some cases, the reporter types only the words "true bill". A variation was found at *People v Figueroa* (No. 8327/88). There the Grand Jury reporter, being frugal, reported only "Bill Found", leaving out the usually used word "True", but adding "Found". In *People v Butler* (No. 9369/88) we had another variation (a wee bit more was reported) the closest to verbatim; "Foreperson: True Bill. (Bill Found.)". These variations upon a theme are unprofessionally recorded. Every single word stated, and by whom, should have been universally recorded. In addition to the rationale for an exact verbatim report, perhaps not as important, there should be a limitation upon the art of the different types of characterizations used by each Grand Jury reporter. Good procedures would have standardized words of art, that is to say, similar language would be used. Most of this is not at all finally determinative, and we do not want the reader to believe we at all are turning our decision on these last few minor points. But it manifests the casualness that has crept in, the ease with which poor procedures can feed upon each other and grow. It also, by its circumstances, shows that all, the Assistant District Attorney, the foreperson, and the Grand Jury could have only meant, when they bandied the words "vote", "Bill Found", or "True Bill", a true bill of indictment, that they knew should have been filed promptly.

Thirdly, every indictment needs to be filed promptly. (CPL 190.65 [3]; *see, People v Cade, supra.)* The statutory language states, *"MUST"* be filed, not may; that's mandatory language (CPL 190.65 [3]; capitalization and emphasis supplied). The statute demands the foreman must "file an indictment". The word "an" means each and every indictment, each true bill, not several bills.

Fourthly, we believe this "must" be filed means every indictment, every vote, every true bill, every vote to indict, must include the process of a filing as it occurs. For if a true bill is a voted indictment, then it must be filed, separately, and not casually, but promptly. A statutory system, especially of criminal law, cannot permit such tolerance nor liberties to be taken by its agents. Nowhere in the statute can this type of power or authority be found to allow the People to thwart the will of the Grand Jury in having voted a true bill, an indictment. The statute said it must be filed, and that is what the agent, the People should have promptly done. If you have any questions about it, if you believe this is *"de minimus non curat lex"* then, if you so insist, we are forced to reduce the argument to the absurd. How about 20 true bills over a three-day span. Still not convinced? How about 100 true bills over a 10-day span? The quantitative difference does not change the quality of the fact that the People are aggregating to themselves power not given to them by the Legislature. That's dangerous. Especially so at a body so secret, so able to be manipulated, bearing such a reputation as having been manipulated, as is, and was, the Grand Jury. The more delicate, the more secret the body, the more careful and conservative the treatment of that criminal law body must be. This is not a body, the Grand Jury, that is able to tolerate violation of its authority given to it by the Legislature. This is a classic case of complying strictly with the old adage, that a variation from the black letter criminal law by the People must be taken seriously. A variance from a criminal statute is strictly construed against the People in many areas. We find such a variance, it appears to have become the common practice at the time. It is egregious and not the type of harmless error we can afford to overlook.

We rule therefore that the effect of not filing a true bill, whether it be 1 or 100, creates an egregious defect. Such a defect, if allowed to stand, would allow an attitude that could only give rise to many more problems of laxness, and different, perhaps bizarre accounting methods.

The Legislature thought this through, for this is a matter of control and accountability. We are dealing with the liberty of our citizens here, in relation to the action in the main, of an ex parte deliberating body. A more grievous personal civil right than the incarceration of many, or the criminal law restraint on all, cannot be envisioned. No, the Legislature wisely prescribed a method of control and accounting for the Grand Jury action. It is set forth, step by step. The People have not the authority to consolidate any one step, or to execute shortcuts of justice of this control and accountability for any reason. So, what may appear procedural on its face, when one agonizes a bit, becomes clearly substantive, going to the core or the criminal law.

Lastly, fifthly, what is the root cause of the defect in these cases, and how may CPL 180.80 be more cogently treated? Let us, in passing, as pure obiter dicta, state the apparent cause of certain Assistant District Attorneys becoming "mechanics", by cleverly devising a way to bypass proper control and accounting methods. They learn the spirit of being "mechanics" at the criminal court level at our hard-pressed crowded New York City courts. Hard pressed to stop the release of defendants charged with serious crimes, they resort to shortcuts. Let me be specific. They are badgered by application for release on CPL 180.80. Having obtained testimony either making out probable cause or tantamount to it, which had been already sworn to a Grand Jury, they fall in the trap of believing there must be a vote, a true bill, an indictment or else the defendant must be released. CPL 180.80 does not say this in any manner. I would recommend everyone reread CPL 180.80 again, until they comprehend what the Legislature stated. To get around the incorrect handling of CPL 180.80, these Assistant District Attorneys become "mechanics" at the Grand Jury. Fiction begets fiction, mechanics begets mechanics. Let us read CPL 180.80 carefully, especially subdivision (3) which states that: "The court is satisfied that the people have shown good cause why such order of release should not be issued. Such good cause must consist of some compelling fact or circumstance which *precluded disposition of the felony complaint within the prescribed period or rendered such action against the interest of justice.*" (Emphasis supplied.) What, to any criminal lawyer, could be a more "compelling fact or circumstance" but that the Grand Jury has heard an undercover officer's testimony, in detail about a "buy and bust" operation, a hand-to-hand role by this defendant to this under-

cover, in return for prerecorded buy money, and more? Thereafter, the arresting officer clearly testifies that he arrested the defendant at the scene within a few minutes and found more drugs on him. Then, at the Grand Jury, the People could have requested a continuance to the next day. What is wrong with that scenario? Why in the name of justice, with the Grand Jury in the middle of its work, with probable cause established or tantamount to same, should or would any court release a defendant? Is that not *"compelling"* enough? Is not the action of the Grand Jury dignified enough? Well, if you don't like that, read on at CPL 180.80 (3), read the very last line: "or". Note it says "or", not *"and/or"*. "[O]r rendered such action against the interest of justice". Isn't releasing on their own recognizance, so many defendants who have records, upon whom such sworn testimony by police officers has already been accomplished, stating what is tantamount to probable cause, against the interest of justice? Does that not "render" release against the interest of justice in such a scenario? That scenario is the majority scenario of these drug cases. What more does it take to satisfy this language of CPL 180.80? The very next day, or the day after, the testimony would be complete. I could understand that an extended continuance of several days would be a problem, but to thwart the actions of the Grand Jury by releasing the defendant at night court, at 9:00 P.M., because there was no indictment filed that afternoon, assuming a scenario not unlike the one we have described above, cheapens the Grand Jury and trivializes its pursuits. To me, we have reached the absurd. So, we release such a defendant instead of holding him. This is indeed a transvaluation of values.

If the People put as much energy into a proper interpretation of CPL 180.80 as outlined above, and aggressively presented it, perhaps boiler plate it, duplicate it in writing, arguing it at criminal court, with perhaps a few well-chosen CPLR article 78 proceedings just to see what might occur, they might not be put in the position they now find themselves, namely, cleverly attempting to circumvent the statutes and laws of the State of New York as a shortcut attempt at thwarting the incorrect release of some of these defendants.

Therefore, these several indictments are dismissed without prejudice pursuant to CPL 210.20 and 210.45. Pursuant to CPL 210.20 (4) the People are hereby authorized to resubmit

the charges of each and every one of the several "true bills" to another Grand Jury.

This order, pursuant to CPL 210.45 (9) shall be deemed to constitute a securing order holding each defendant for action of the Grand Jury. The same bail conditions shall remain on each case.