**F I L E D**

**PUBLISH**

**September 29, 2006**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

      No. 04-2324

MARLENE MARTINEZ-JIMENEZ,

      Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-04-1115)**

---

Luis B. Juarez, Juarez Law Office, Las Vegas, NM, for Appellant.

Norman Cairns, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, NM, for Appellee.

---

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Marlene Martinez-Jimenez pleaded guilty to illegal reentry by a deported alien previously convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2). She was sentenced to fifty-seven months' imprisonment based in part on the district court's conclusion that she had a

criminal history category of V. On appeal, Ms. Martinez-Jimenez argues that there was insufficient evidence to prove one of the prior convictions used to establish that criminal history category. We conclude that the district court did not clearly err in finding the evidence sufficient and therefore affirm the sentence.

## I. BACKGROUND

On May 13, 2004, Ms. Martinez-Jimenez was arrested by U.S. Border Patrol agents in New Mexico. She admitted to the agents that she was a citizen and national of Colombia and that she had entered the United States illegally. A records check showed that Ms. Martinez-Jimenez had previously been deported from the United States to Colombia on three separate occasions. The records also showed that prior to her first deportation, she had been convicted in New York of felony narcotics possession. On June 15, 2004, Ms. Martinez-Jimenez was charged by information with illegal reentry by a deported alien previously convicted of an aggravated felony.

Ms. Martinez-Jimenez eventually entered into a plea agreement whereby she agreed to plead guilty to the charged offense. Among other things, the plea agreement stipulated that the appropriate offense level for purposes of sentencing Ms. Martinez-Jimenez was nineteen[1] and provided that her criminal history

---

[1]This stipulation was pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which provides that "the plea agreement may specify . . . that
(continued...)

category would "be determined by the United States Probation Office and reflected in the presentence report prepared in this case."

The presentence report ("PSR") that was prepared listed multiple prior convictions in Ms. Martinez-Jimenez's criminal history and assessed a total of nine criminal history points for five of the convictions. The PSR also added two criminal history points to Ms. Martinez-Jimenez's criminal history score because she committed the instant offense while under a criminal justice sentence, see United States Sentencing Guidelines ("U.S.S.G.") § 4A1.1(d), and one criminal history point because she committed the instant offense less than two years after release from imprisonment, see id. § 4A1.1(e). The resulting total of twelve criminal history points put her in criminal history category V. See id. § 5A. When combined with the stipulated offense level of nineteen, the corresponding Guidelines sentencing range was fifty-seven to seventy-one months. Id.

Ms. Martinez-Jimenez filed objections to the PSR's calculation of her criminal history score. Specifically, she objected to the six criminal history

_____

[1](...continued)
a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply" and that "such a recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). This Rule allows the parties to stipulate to an offense level. See United States v. Veri, 108 F.3d 1311, 1313-14 (10th Cir. 1997) (construing Rule 11(e)(1)(C), the precursor of Rule 11(c)(1)(C)).

points allocated for the four prior convictions listed in paragraphs 22, 23, 24, and 25 of the PSR.[2] Ms. Martinez-Jimenez contended that the evidence that she had been convicted in those instances was insufficient; she also argued that there was insufficient proof that she had either been represented by counsel or waived her right to counsel in those prior proceedings.

At Ms. Martinez-Jimenez's sentencing hearing, the district court evaluated her objections to each of the four prior convictions. The court sustained her objections to paragraphs 23 and 25 of the PSR, concluding that there was insufficient evidence to prove those two convictions.[3] Through counsel, Ms. Martinez-Jimenez orally withdrew her objection to paragraph twenty-four.[4] As for her objection to the conviction in paragraph twenty-two — for attempted criminal possession of a controlled substance — the district court concluded both that there was sufficient evidence of the conviction and that Ms. Martinez-

---

[2]These prior convictions, together with the criminal history points allocated to each conviction, were as follows:
Paragraph 22: attempted criminal possession of a controlled substance (3 points),
Paragraph 23: disorderly conduct (1 point),
Paragraph 24: theft by deception (1 point), and
Paragraph 25: petit larceny (1 point).

[3]The government does not appeal the district court's conclusion that the convictions listed in paragraphs 23 and 25 were not sufficiently proven.

[4]The conviction in paragraph twenty-four added one point to Ms. Martinez-Jimenez's criminal history score.

Jimenez had not met her burden of proving by a preponderance of the evidence that the conviction was constitutionally infirm.

The evidence that the district court found sufficient to prove the conviction listed in paragraph twenty-two was of two kinds. First, the probation office had procured a computer printout from the National Crime Information Center ("NCIC") that indicated that in 1989 "Marilina Martinez"[5] had pleaded guilty in New York state court to "ATT CPCS-5" (attempted criminal possession of a controlled substance, 5th degree),[6] a class E felony, and was sentenced on January 2, 1990 to between eighteen months' and three years' imprisonment. Second, the probation office had contacted the New York courts for information about the prior narcotics conviction and had received a letter from the Supreme Court of New York, signed by the county clerk of New York County, in response. The letter advised that "Susana Cabajar" had pleaded guilty on December 7, 1989 to "Attempted Criminal Possession of a Controlled Substance 5th Degree" and had been sentenced on January 2, 1990 to "One and half years [sic] to Three years as a Second Felony Offender." The district court concluded that these two pieces of

_____

[5]The printout stated that the following aliases were also used by the subject of the report: Marlena Martinez, Marlina Martinez, Susana Martinez, Susana Cabajar, Susana Carbajar, Susana Carbagal, Susana Casbojol, Susoho Rodriguez, and Carmen Torres.

[6]People v. Marine, 142 Misc. 2d 449 (N.Y. Sup. Ct. 1989), makes clear that CPCS stands for criminal possession of a controlled substance.

evidence were sufficient to prove the conviction in paragraph twenty-two and that the three criminal history points for the conviction were therefore properly added to Ms. Martinez-Jimenez's criminal history score.[7]

Despite the district court's exclusion of the convictions listed in paragraphs 23 and 25, the final total of ten criminal history points still corresponded to criminal history category V and a Guidelines sentencing range of fifty-seven to seventy-one months. See U.S.S.G. § 5A. On November 16, 2004, the district court sentenced Ms. Martinez-Jimenez to fifty-seven months' imprisonment, the low end of that range. Because of the potential that mandatory application of the Guidelines would be found unconstitutional by the Supreme Court — a potential later realized in United States v. Booker, 543 U.S. 220 (2005) — the district court presciently proposed an identical alternative non-Guidelines sentence of fifty-seven months. Ms. Martinez-Jimenez timely filed a notice of appeal from her sentence.

---

[7]The district court memorialized its oral ruling in a written memorandum opinion, stating that "[t]he letter from the Supreme Court of the State of New York, which was signed by the County Clerk, coupled with the NCIC record listing the conviction at issue, is sufficient to establish, by a preponderance of evidence, the prior conviction [listed in paragraph twenty-two]." United States v. Martinez-Jimenez, No. CR 04-1115, 2004 WL 3541202, at *4 (D.N.M. Nov. 18, 2004) (unpublished).

## II. DISCUSSION

### A. Issue on appeal

On appeal, Ms. Martinez-Jimenez objects only to the district court's use of the conviction in paragraph twenty-two to increase her criminal history score by three points and thus to raise her criminal history category to V. She does not challenge the other convictions used by the district court in calculating her criminal history category, nor does she attack any other aspect of her conviction or sentence.[8] Furthermore, her challenge to the conviction in paragraph twenty-two is simply that the fact of conviction was insufficiently proven; she does not claim on appeal that the conviction, if sufficiently proven, was constitutionally infirm.

At bottom, then, this appeal will determine only whether Ms. Martinez-Jimenez should have been allocated seven criminal history points instead of ten — and therefore whether she should have been sentenced using a criminal history category of IV instead of V. See U.S.S.G. § 5A. We note that Ms. Martinez-Jimenez's sentence of fifty-seven months would be a permissible Guidelines sentence regardless of which criminal history category is used: it would be the high end of the range using category IV (46–57 months) and the low

---

[8]She does not, for example, claim that her sentence is unconstitutional under the Supreme Court decision in Booker, 543 U.S. 220.

end using category V (57–71 months). Nonetheless, that fact does not eliminate the need to address Ms. Martinez-Jimenez's claim of error. See United States v. Brown, 316 F.3d 1151, 1159 (10th Cir. 2003) ("Where the sentencing error caused an increase in the applicable adjustment level, the fact that guideline ranges overlap does not make a plain error harmless.") (quotation omitted); see also United States v. Knight, 266 F.3d 203, 207 (3d Cir. 2001) (holding that "the application of an incorrect guideline range resulting in a sentence that is also within the correct range [presumptively] affects substantial rights"). Although the district court proposed an identical alternative sentence in case the Guidelines were found unconstitutional, it did not indicate that it would have imposed an identical sentence if Ms. Martinez-Jimenez's criminal history category was IV instead of V. See United States v. Urbanek, 930 F.2d 1512, 1516 (10th Cir. 1991) ("[W]e cannot agree . . . that no remand is required simply because the sentence imposed was within either of two arguably applicable Guideline ranges. Unless the district court makes it clear during the sentencing proceeding that the sentence would be the same under either of the applicable Guideline ranges, we are compelled to remand for resentencing when . . . an improper [Guidelines calculation] was applied.") (citations omitted); Alaniz v. United States, 351 F.3d 365, 368 (8th Cir. 2003) (holding that a sentence falling within an area of overlap between correct and incorrect Guidelines ranges is "unreviewable only if the

district court, at the time of sentencing, states unequivocally that it would impose the same sentence with or without the challenged calculation"); Knight, 266 F.3d at 208. Therefore we must address Ms. Martinez-Jimenez's challenge to the district court's decision.

### B. Standard of review

"The district court's factual findings at sentencing are reviewed for clear error, while its interpretation of the Sentencing Guidelines is a question of law reviewed de novo." United States v. Simpson, 94 F.3d 1373, 1380 (10th Cir. 1996). Because the only challenge here is to the district court's factual finding that Ms. Martinez-Jimenez was convicted of attempted criminal possession of a controlled substance, our review is for clear error. We will reverse for clear error "only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." United States v. Cernobyl, 255 F.3d 1215, 1221 (10th Cir. 2001) (quotation omitted).

### C. Analysis

"Whenever a prior conviction is relevant to sentencing, the government must establish the fact of that conviction by a preponderance of the evidence." United States v. Cooper, 375 F.3d 1041, 1052 (10th Cir. 2004). Ms. Martinez-Jimenez argues that the government failed to prove by a preponderance of the

evidence that she was convicted of the offense listed in paragraph twenty-two because the NCIC report and the letter lack "sufficient indicia of reliability to support [their] probable accuracy." U.S.S.G. § 6A1.3(a); see also United States v. Beaulieu, 893 F.2d 1177, 1180 (10th Cir. 1990) ("The Guidelines expressly allow the use of any *reliable* information.") (emphasis altered). We disagree and conclude that the district court did not clearly err in finding that the evidence establishing her prior conviction was sufficiently reliable.

"[T]he National Crime Information Center computer system ('NCIC') . . . is a national criminal records data system administered by the Federal Bureau of Investigation. NCIC contains criminal history information, including outstanding warrants, and is available to police departments nationwide." Case v. Kitsap County Sheriff's Dep't, 249 F.3d 921, 923 (9th Cir. 2001) (citation omitted). As testified to by the probation officer in this case, information is entered into the NCIC based on a suspect's fingerprints taken at the time of arrest.

Ms. Martinez-Jimenez has never argued that she is not the person referred to in the NCIC report that lists her alleged prior narcotics conviction. Nor has she put on any evidence tending to show that the alleged conviction never occurred. Rather, she merely argues — without citing any case to have so held — that the NCIC report is insufficiently reliable to be used to increase her criminal history category.

The Eighth Circuit has recently approved of using an NCIC report to establish a prior conviction for sentencing purposes. In United States v. Urbina-Mejia, 450 F.3d 838 (8th Cir. 2006), the sentencing court had applied a sixteen-level enhancement because the defendant had previously been convicted of a crime of violence. Id. at 839. The defendant challenged the enhancement on appeal, claiming that the government had not proven that he was the same person who was convicted of the earlier crime. Id. The Eighth Circuit explained that

> Johnson, the PSR author, testified that the [earlier] convictions were . . . in the NCIC database, which is based on fingerprint identification. Johnson explained that during the five years in which he prepared over 200 PSRs, he knew of one instance where the NCIC report attributed a conviction to the wrong person. He believed this was simply "input error," and after it was brought to the FBI's attention, the fingerprint analysis helped correct the mistake.

Id. The Eighth Circuit concluded that the sentencing court did not clearly err by relying on the NCIC report to establish the prior conviction:

> During the past five years, Johnson experienced one inaccurate NCIC report of over 200, and that was due to input error, not a fingerprint mistake. While Urbina-Mejia is entitled to put the government to its burden, he provides no evidence that the NCIC report is unreliable. Given the testimony and evidence, the district court found the probability of a mistake was low, and that the NCIC report had sufficient indicia of reliability to support its probable accuracy. . . . [T]he district court did not clearly err in finding by a preponderance of the evidence that Urbina-Mejia had [been convicted of the prior offense.]

Id. at 840; cf. United States v. McDonald, 606 F.2d 552, 553-54 (5th Cir. 1979) (stating in the context of probable cause to arrest that "the cases uniformly

- 11 -

recognize that NCIC printouts are reliable enough to form the basis for the reasonable belief which is needed to establish probable cause").

Persuasive unpublished opinions from this and other circuits have similarly approved use of NCIC reports to establish past convictions, at least in the absence of any evidence indicating that the reports are unreliable. For example, in United States v. Madrid-Flores, 129 F. App'x 401 (10th Cir. 2005) (unpublished), the defendant "argued through counsel at sentencing that he had not committed one of the prior crimes enumerated in the PSR, for which he received one criminal history point." Id. at 402. We noted, however, that "the probation officer represented to the court that a records check was performed based on NCIC fingerprint comparisons and the records indicated that [the defendant] did in fact commit the prior crime at issue" and that the defendant "offered no evidence to the contrary." Id. We therefore concluded that "[t]he district court thus did not err in finding that [the defendant] committed the prior crime." Id. Similarly, in United States v. Dyer, No. 05-15322, 2006 WL 1735949 (11th Cir. June 23, 2006) (unpublished), the defendant argued that the sentencing court erred by relying on an NCIC report to include an earlier conviction in his criminal history. Id. at *1. The Eleventh Circuit concluded that "[b]ecause Defendant offered no evidence indicating that the NCIC report was unreliable . . . , it was not clearly erroneous for the district court to rely on the NCIC report in determining Defendant's

criminal history category." Id.  Other circuits have come to similar conclusions.

See United States v. Bates, No. 99-11382, 2000 WL 1835092, at *4–*5 (5th Cir.

Nov. 21, 2000) (unpublished) (concluding, where the probation officer's NCIC

search "linked Bates with each of the convictions listed in the PSR," that "the

district judge could easily find that the information in the PSR was . . .

sufficiently reliable to link Bates to the other convictions"); United States v.

Smith, No. 91-10317, 1992 WL 132925, at *1–*2 (9th Cir. June 15, 1992)

(unpublished) (concluding, where the government used both the FBI number[9]

corresponding to the defendant's fingerprints and "the National Crime

Information Center computer system to identify [the defendant's] prior arrests and

convictions," that "the government demonstrated the reliability of the NCIC

system when FBI numbers are used" and that "[t]he district judge did not clearly

err in relying on that information in upholding the use of the convictions").

Although not specifically mentioning NCIC reports, other cases have also

concluded that computer reports and printouts may be sufficiently reliable for a

sentencing court to use them to establish prior convictions.  See, e.g., United

States v. Marin-Cuevas, 147 F.3d 889, 895 (9th Cir. 1998) ("[T]he probation

officer who prepared Marin-Cuevas's Presentence Report obtained his

_____

[9]Each set of fingerprints is assigned a unique FBI number that can be used
to connect a suspect with other criminal activity.

information from a reliable source[—]the computerized criminal history—and had no reason to prevaricate. Therefore, the probation officer's attestation . . . bore sufficient indicia of reliability, and the district court did not err in considering it at sentencing.") (quotation omitted); United States v. Chacon-Sanchez, 16 F. App'x 749, 750 (9th Cir. 2001) (unpublished) (same); United States v. Esparza-Varela, 106 F. App'x 1, 4 (10th Cir. 2004) (unpublished) (finding computer printouts "sufficiently reliable" to establish prior convictions when the printouts "contain similar information to that found on a docket sheet"); United States v. McGee, No. 99-2054, 1999 WL 704288, at *1 (10th Cir. Sept. 10, 1999) (unpublished) (concluding that "computer printouts of court docket entries" were sufficiently reliable to establish the prior convictions).

The district court's finding in this case was even more conservative than those held in the above-cited cases not to be clearly erroneous. The court concluded that the NCIC report, in *combination* with the letter from the Supreme Court of New York confirming Ms. Martinez-Jimenez's conviction, was sufficiently reliable evidence to establish the prior conviction. At least one case has allowed reliance on a letter from a state court, *by itself*, to establish a prior conviction in that court for sentencing purposes. See United States v. Colletti, 984 F.2d 1339, 1345 (3d Cir. 1992) ("[I]t was permissible to rely upon a letter

from a Municipal Court clerk as proof of one of the prior convictions relied upon . . . .").

We conclude that the district court's conclusion that the letter and the NCIC report together sufficiently established Ms. Martinez-Jimenez's prior narcotics conviction was not clearly erroneous. We and other courts have previously allowed the use of these types of evidence to establish prior convictions, and the NCIC report and letter are consistent with each other. Ms. Martinez-Jimenez does not argue that she is not the person that is the subject of the NCIC report and the letter in this case;[10] nor has she introduced any evidence that she was not convicted of the crime listed in the report and letter or any evidence as to the unreliability of NCIC reports or the letter confirming her conviction. Under these circumstances, the district court did not clearly err in finding that the conviction listed in paragraph twenty-two had been sufficiently established. See United States v. Zuniga-Chavez, No. 04-2293, slip op. at 13, 2006 WL 2753852, — F.3d — (10th Cir. Sept. 27, 2006) ("Because Defendant did not argue that any persuasive contradictory evidence tended to show that he was not convicted of the crimes used to enhance his sentence, we conclude that the

---

[10]Although the letter gave the name of the person convicted as "Susana Cabajar," not Marlene Martinez-Jimenez, Susana Cabajar is listed in the NCIC report as one of Ms. Martinez-Jimenez's aliases, and she has never argued that it is not actually a name she has used.

government has met its burden of showing the prior convictions by a preponderance of the evidence."); Simpson, 94 F.3d at 1381 ("We believe that a certified docket sheet is adequate, *absent some contradictory evidence by the defendant*, to establish the existence of a prior conviction for [purposes of enhancing a sentence under the Guidelines.]" (emphasis added); United States v. Johnson, 973 F.2d 857, 861 (10th Cir. 1992) (allowing use of "certified copies of journal entries indicating . . . revocation of probation based on [the challenged prior conviction]" to establish a prior conviction where the defendant "offered no proof that contradicted the government's evidence"). The district court thus properly allocated ten criminal history points and properly sentenced Ms. Martinez-Jimenez using a criminal history category of V.

### III. CONCLUSION

Because Ms. Martinez-Jimenez's only challenge was to the reliability of the evidence used to establish her prior convictions, and because the district court did not err in finding that evidence sufficiently reliable, we AFFIRM Ms. Martinez-Jimenez's sentence.