13-359-cr (L)
USA v. Reed

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: February 6, 2014     Decided: June 25, 2014)

Docket No. 13-359(L), 13-361(con), 13-380(con)

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

Appellee,

- v.-

GREGORY REED, also known as Sharky, JOHN JOHNSON, RONNIE GONZALEZ, also known as Satan,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - -x

Before:                    JACOBS, CALABRESI, and POOLER, Circuit Judges.

Gregory Reed, John Johnson, and Ronnie Gonzalez appeal from judgments

of conviction entered in the United States District Court for the Southern District

of New York (Sullivan, J.).  For the reasons stated here and in a summary order

issued simultaneously with this opinion, we affirm.

TODD W. BLANCHE, Assistant United States Attorney (with Brent S. Wible, Assistant United States Attorney, on the brief), for Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

JEREMY SCHNEIDER (with Lucas Anderson on the brief), Rothman, Schneider, Soloway & Stern, LLP, New York, New York, for Appellant Gregory Reed.

JAMES E. NEUMAN (with David S. Greenfield on the brief), New York, New York, for Appellant John Johnson.

THOMAS H. NOOTER, Freeman, Nooter & Ginsberg, New York, New York, for Appellant Ronnie Gonzalez.

DENNIS JACOBS, Circuit Judge:

Gregory Reed, John Johnson, and Ronnie Gonzalez (collectively, "Defendants") appeal from judgments of conviction entered in the United States District Court for the Southern District of New York (Sullivan, J.).[1] We affirm. This opinion decides one issue presented by Reed. Other issues raised by Reed and the other defendants are considered in a summary order issued simultaneously with this opinion.

Reed contends that his Sixth Amendment right to counsel was violated

---

[1] Gregory Reed and John Johnson appeal from judgments of conviction entered on January 17, 2013, and Ronnie Gonzalez appeals from a judgment of conviction entered on January 23, 2013.

when he was placed in a lineup on April 8, 2010, without the benefit of counsel, notwithstanding that (according to Reed) his right to counsel had attached because a Kings County Grand Jury had voted a true bill on April 5, 2010. The district court concluded that Reed's Sixth Amendment right to counsel had not yet attached because no "accusatory instrument" had been filed in any court, and, accordingly, "adversary judicial criminal proceedings" had not commenced under New York law. United States v. Reed, No. 11 Cr. 487 (RJS), 2012 WL 2053758, at *2, 2012 U.S. Dist. LEXIS 79552, at *8, 9 (S.D.N.Y. June 6, 2012) (internal quotation marks omitted, emphasis in original). Accordingly, Judge Sullivan denied Reed's motion to suppress.

We decline to follow the district court's analysis. Under Rothgery v. Gillespie County, 554 U.S. 191 (2008), Reed's Sixth Amendment right to counsel may well have attached when the Grand Jury voted a true bill of indictment against him. We need not decide that question, however, because any error in admitting at trial the lineup identification of Reed was harmless beyond a reasonable doubt.

**I**

A drug dealer named Donnell Richardson wanted to oust and replace competitors who were doing business in the lobby of an apartment building. He used the three defendants to frighten away his rivals, with the inducement that

they could keep whatever drugs or money they could lay hands on. On December 1, 2007, defendant Reed and a second member of the ad hoc crew entered the lobby armed, fired one shot each, and killed Bernardo Garcia. The other dealer, Luis Navarro, escaped unhurt up a staircase. The third defendant stood watch outside. Richardson waited in his car nearby.

On April 5, 2010, a Grand Jury sitting in Bronx County Supreme Court voted a true bill in connection with the December 1, 2007 shooting, charging Reed with murder in the second degree, attempted murder in the second degree, manslaughter in the first degree, and two counts of criminal possession of a weapon in the second degree.

No indictment was filed and no arrest warrant was issued at that time. Nevertheless, in the early morning hours of April 8, 2010, state law enforcement officers "detained" Reed. Reed, No. 11 Cr. 487 (RJS), 2012 WL 2053758, 2012 U.S. Dist. LEXIS 79552, at *4. (The stated and actual legal grounds for this detention are unclear.) When Reed was told, later that afternoon, that he would be placed in a lineup, he explicitly requested that counsel be appointed to observe the lineup. That request was denied. At the lineup, the surviving victim, Navarro, identified Reed as his assailant. Reed was thereafter charged pursuant to a criminal complaint filed by the District Attorney's Office. The next day, Reed was presented before a judge and arraigned on the complaint. An indictment was

4

filed in Bronx County Supreme Court on April 28, 2010, twenty-three days after the return of the true bill.

The bulk of the information leading to the conviction of Reed and his co-defendants was provided by Richardson, a drug dealer with a long and varied criminal history. Richardson recounted to Special Agent Daniel Dyer of the Drug Enforcement Agency (as Richardson later testified at trial) that he enlisted Reed and defendant Ronnie Gonzalez to rob the rival drug dealers of their drugs, guns, and money and take over the building for himself, and that Reed in turn recruited defendant John Johnson. As payment for their services, the men agreed that Defendants would keep any drugs and money that they stole.

In light of Richardson's disclosure that the shooting resulted from a failed robbery of crack cocaine and heroin, federal criminal proceedings were initiated against Defendants. On June 6, 2011, Indictment 11 Cr. 487 (RJS) was filed, charging Defendants with Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One); attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two); and causing the death of Bernardo Garcia through the use of a firearm during and in relation to the crimes charged in Counts One and Two, in violation of 18 U.S.C. §§ 924(j) and 2 (Count Three).

On March 9, 2012, Reed moved to suppress Navarro's lineup identification of Reed as his assailant, claiming it was conducted in violation of his Sixth Amendment right to counsel. The district court denied the motion, and the case proceeded to trial. The jury convicted each defendant of one count of conspiracy to commit Hobbs Act robbery and one count of attempted Hobbs Act robbery, both in violation of 18 U.S.C. § 1951, and one count of possession and use of a firearm during a crime of violence resulting in the death of another, in violation of 18 U.S.C. § 924(j). On January 15, 2013, Reed was sentenced to life imprisonment and three years' supervised release.

This appeal followed.

## II

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms: it does not attach until a prosecution is commenced." Rothgery, 554 U.S. at 198 (quoting U.S. Const. amend. VI) (some internal quotation marks and footnote omitted). "Attachment" refers to "when the [Sixth Amendment] right may be asserted"; it does not concern the separate question of "what the right guarantees" once it is attached. Id. at 214 (Alito, J.,

6

concurring) (emphasis in original).  The issue here is whether Reed's Sixth Amendment right to counsel attached upon the Grand Jury's voting of the true bill, i.e., when it voted to indict Reed.  There is no question that, if the right attached, Reed was entitled to counsel during the lineup at which Navarro identified Reed as his assailant.  See United States v. Wade, 388 U.S. 218, 226, 237 (1967) (explaining that a post-indictment corporeal lineup is "a critical stage of the prosecution" at which the Sixth Amendment guarantees the presence of counsel).

The Supreme Court has "pegged commencement [of a prosecution] to 'the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Rothgery, 554 U.S. at 198 (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)).  "The rule is not 'mere formalism,' but a recognition of the point at which 'the government has committed itself to prosecute,' 'the adverse positions of government and defendant have solidified,' and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'"  Id. (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion)).

Under New York law, "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court."  N.Y. Crim. Proc. § 100.05.  This, the Government argues (and the district court held), is the beginning and end of the

7

inquiry: adversary judicial proceedings began (at the earliest) only when Reed was brought to court and presented on the complaint--that is, April 9, 2010, the day after the lineup and four days after the grand jury voted the true bill. See Reed, No. 11 Cr. 487 (RJS), 2012 WL 2053758, 2012 U.S. Dist. LEXIS 79552, at *7-8; see also People v. Blake, 35 N.Y.2d 331, 339-40 (N.Y. 1974) (relying on Kirby and § 100.05 to hold that Sixth Amendment rights attach only upon the filing of an accusatory instrument). Case law since Kirby, however, has clarified that "what counts as a commitment to prosecute is an issue of federal law unaffected by allocations of power among state officials under a State's law." Rothgery, 554 U.S. at 207; see also Moran v. Burbine, 475 U.S. 412, 429 n.3 (1986) ("[T]he type of circumstances that would give rise to the right would certainly have a federal definition[.]").

In Rothgery, the Fifth Circuit had held that the Sixth Amendment did not attach at the defendant's initial arraignment (which under Texas law need not be attended or even known of by the assigned prosecutor), "reason[ing] that because the decision not to prosecute is the quintessential function of a prosecutor under Texas law, the State could not commit itself to prosecution until the prosecutor signaled that it had." 554 U.S. at 207 (internal quotation marks and citation omitted). The Supreme Court reversed, explaining that "the federal standard" is "focused not . . . on the activities and knowledge of a particular state official who

8

was presumably otherwise occupied," id. at 198-99, but rather on whether the defendant is "'faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law' that define his capacity and control his actual ability to defend himself against a formal accusation that he is a criminal," id. at 207 (quoting Kirby, 406 U.S. at 689). Whether or not the prosecutor is present at an initial arraignment to confirm the State's intent, it is by then "too late to wonder whether [the defendant] is 'accused' within the meaning of the Sixth Amendment, and it makes no practical sense to deny it." Id. It did not matter, for purposes of federal law, that a Texas prosecutor retains "the option to change [the State's] official mind later[,] . . . [because] without a change of position, a defendant subject to accusation after initial appearance is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives." Id. at 209-10.

## B

As Rothgery illustrates, attachment of the right to counsel here does not depend solely on New York's statutory definition of the "commencement" of criminal proceedings. Analysis focuses instead on the substantive nature of a particular New York state criminal-procedural moment in light of the principles

9

underlying the Sixth Amendment right to counsel to determine whether the State has formally committed itself to prosecute to such an extent that "adversary judicial criminal proceedings" have been initiated. Id. at 198.

Whether attachment occurs upon the voting of a true bill by a Grand Jury is a close and subtle question of New York criminal procedure. Grand Juries exist by virtue of the New York State Constitution and the Superior Court that impanels them; they are not arms or instruments of the District Attorney. See N.Y. Const., art. I, § 6; N.Y. Crim. Proc. § 190.05; see also Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v. Doe, 50 N.Y.2d 14, 14 (1980). The statutory provisions that govern the duties and procedures of the Grand Jury are to "be strictly construed and compliance therewith meticulously observed." In re June 1982 Grand Jury of the Supreme Ct. Rensselaer Cnty., 98 A.D.2d 284, 286 (N.Y. App. Div. 3d Dep't 1983) (citation omitted).

The voting of a true bill is a vote to indict, and, "[u]pon voting to indict a person, a grand jury must, through its foreman or acting foreman, file an indictment with the court by which it was impaneled." N.Y. Crim. Proc. § 190.65(3). The filing requirement is "a ministerial act and not necessary to giving finality to a Grand Jury's decision," People v. Wesley, 161 Misc. 2d 786, 791 (N.Y. Sup. Ct. 1994) (citing People v. Cade, 74 N.Y.2d 410, 416 (1989)), because it is upon the voting of a true bill that the Grand Jury "ha[s] accepted the People's evidence

as sufficient to support the charges," Cade, 74 N.Y.2d at 416. At that moment, the Grand Jury becomes obligated by statute to file an indictment, but the failure to do so immediately or even promptly is not a "jurisdictional defect" in the indictment or the true bill itself. Cade, 74 N.Y.2d at 416. A true bill, therefore, is "in effect . . . the same as an indictment." People v. Marine, 142 Misc. 2d 449, 457 (N.Y. Sup. Ct. 1989). It is therefore arguable that the voting of a true bill by a New York Grand Jury renders a defendant "accused" within the meaning of the Sixth Amendment.

Potentially to the contrary is People v. Cade, 74 N.Y.2d 410, 416 (N.Y. 1989), which holds that a grand jury can vacate its true bill and substitute another. There the defendant claimed, and the Appellate Division agreed, that his prosecution pursuant to the second true bill should have been precluded without an order of the court permitting resubmission of the case to the Grand Jury under N.Y Crim. Proc. § 190.75(3). Id. The New York Court of Appeals, however, held that the vacatur of the first true bill "cannot be treated as a dismissal because [it] w[as] not the equivalent of a rejection of the People's evidence. Quite the contrary, [it] signif[ied] acceptance, not rejection." Cade, 74 N.Y.2d at 416. The challenged practice therefore was permissible, at least absent a showing of prejudice to the defendant. See id. 415-17.

11

The legitimacy of this practice under New York law, however, does not compel affirmance of the district court's ruling. As in Rothgery, the right to counsel might attach notwithstanding that a New York prosecutor might request vacatur of the true bill, "[because] without a change of position, a defendant [against whom a true bill has been voted] is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives." Rothgery, 554 U.S. at 210. (Nor is it at all clear, however, that this practice of vacatur-and-substitution would be constitutionally impermissible if the right had then attached.)

The issue is a subtle one under New York criminal procedure, and may closely touch settled practices. Since we can avoid deciding the question for the reason stated in the following Point, we decline to decide it.

**III**

In Gilbert v. California, 388 U.S. 263 (1967), the Supreme Court enunciated a per se rule excluding any pre-trial lineup identification conducted in violation of the Sixth Amendment right to counsel. See id. at 273 ("Only a per se exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the

presence of his counsel at the critical lineup."). The admission in evidence of Navarro's lineup identification therefore may have been error.

We will not remand for a new trial, however, if such an error was "harmless constitutional error under Chapman v. California, 386 U.S. 18 (1967)." Moore v. Illinois, 434 U.S. 220, 232 (1977) (pre-trial identification violated defendant's Sixth Amendment right to counsel, but case remanded for harmless error determination); see also Meadows v. Kuhlmann, 812 F.2d 72, 76 (2d Cir. 1987) (determining that admission of lineup identification in violation of defendant's Sixth Amendment right to counsel was harmless). Accordingly, any error in admitting Navarro's lineup identification of Reed "would not require reversal of [Reed's] conviction if the State could show 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Sullivan v. Louisiana, 508 U.S. 275, 279 (1993) (quoting Chapman, 386 U.S. at 24). "Consistent with the jury-trial guarantee, the question [Chapman] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather . . . whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id. (citations omitted, emphasis in original).

Putting aside Navarro's lineup identification of Reed, the evidence linking Reed to the shooting at the building was overwhelming. In convicting the

13

defendants of conspiracy to commit an attempted Hobbs Act robbery, the jury necessarily credited the testimony of Richardson, the sole witness who explained that Defendants had intended to rob the drug dealers (rather than merely to assault or kill them). Richardson testified that he knew Reed well, identified Reed as one of the participants in the attempted robbery and murder, and described the process of recruiting Reed to commit the robbery. Richardson and Reed called each other sixteen times on December 1, 2007--far more frequently than at any point during the previous month.

Moreover, Navarro had identified Reed as his assailant in a photo array on September 23, 2008, nearly 18 months prior to the lineup. This identification (the admissibility of which is not contested) renders the lineup identification merely cumulative and lends further credibility to Richardson's identification of Reed.

In light of Richardson's detailed testimony regarding Reed's involvement in the robbery, which the jury necessarily credited, and the prior identification of Reed by Navarro, we are sure that the jury's verdict was unattributable to the admission of the lineup identification of Reed by Navarro, and that any error was thus harmless.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the summary order issued simultaneously with this opinion, we affirm Defendants' convictions.